```
 1                 IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE EASTERN DISTRICT OF TEXAS

 3                          MARSHALL DIVISION

 4   TRAXCELL TECHNOLOGIES, LLC,  )(

 5        PLAINTIFF,              )(    CIVIL ACTION NO.

 6                               )(    2:18-CV-412-RWS-RSP

 7   VS.                          )(    MARSHALL, TEXAS

 8                               )(

 9   NOKIA SOLUTIONS AND NETWORK  )(

10   US LLC, ET AL.,              )(    MAY 2, 2019

11        DEFENDANTS.             )(    9:01 A.M.

12                        SCHEDULING CONFERENCE

13              BEFORE THE HONORABLE JUDGE ROY PAYNE

14                  UNITED STATES MAGISTRATE JUDGE

15   APPEARANCES:

16   FOR THE PLAINTIFF: (See Attorney Attendance Sheet docketed
                         in minutes of this hearing.)
17

18   FOR THE DEFENDANT: (See Attorney Attendance Sheet docketed
                         in minutes of this hearing.)
19

20   COURT REPORTER:      Shelly Holmes, CSR, TCRR
                          Official Court Reporter
21                        United States District Court
                          Eastern District of Texas
22                        Marshall Division
                          100 E. Houston
23                        Marshall, Texas  75670
                          (903) 923-7464
24

25   (Proceedings recorded by mechanical stenography, transcript
     produced on a CAT system.)
```

```
 1                    I N D E X

 2

 3  May 2, 2019

 4                                        Page

 5       Appearances                      1

 6       Hearing                          3

 7       Court Reporter's Certificate     45

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          COURT SECURITY OFFICER:  All rise.

2          THE COURT:  Good morning.  Please be seated.

3          For the record, we're here for the renewed

4  scheduling conference in Traxcell Technologies versus Nokia

5  Solutions, et al., Case No. 2:18-412 on our docket.

6          Would counsel state their appearances for the

7  record?

8          MR. RAMEY:  Good morning, Your Honor.  Bill Ramey

9  for the Plaintiff, Traxcell Technologies, LLC.

10          THE COURT:  All right.  Thank you, Mr. Ramey.

11          MR. JONES:  Your Honor, Mike Jones for the

12  Defendants, T-Mobile and Nokia.

13          THE COURT:  All right.

14          MR. JONES:  And we're ready to proceed, Your

15  Honor.

16          THE COURT:  Thank you, Mr. Jones.

17          MR. MOFFA:  Your Honor, Matthew Moffa with Perkins

18  Coie for Defendant, HMD Global OY, and as stated in our

19  motion to dismiss, we've not yet been served process, so I

20  believe we're not ready to proceed.

21          THE COURT:  All right.  Thank you, Mr. Moffa.

22          Let -- let me take that issue up first.

23          Mr. Ramey, would you talk to me about your

24  position as to the status of service of process on HMD?

25          MR. RAMEY:  Yes, Your Honor.

1          Let me first apologize to the Court for not making

2    the Court's order -- the Court order that service be

3    complete by March 28th of this year, and we did make good

4    faith efforts starting on the day -- maybe within three

5    days of the previous scheduling conference to effect

6    service.

7          THE COURT:  I've read the affidavit submitted by

8    your processor server.  And it's very thorough.  I

9    understand what efforts were taken up to the time that he

10   filed that.

11         Do you believe at this point that you have

12   accomplished proper service on HMD?

13         MR. RAMEY:  Yes, Your Honor.  As of yesterday, I

14   can confirm because I personally walked it to -- through

15   the process, that the First Amended Complaint has been put

16   in the mail to Texas Secretary of State to -- for them to

17   serve process on the Finland upon branch of HMD Global OY.

18         THE COURT:  And tell me about your legal basis to

19   serve in that fashion as opposed to go through the Hague.

20         MR. RAMEY:  Yes, Your Honor.

21         So the Federal Rules of Civil Procedure, Rule 4,

22   says any process that's allowed by the state.  And the

23   state of Texas allows service of process through the Texas

24   Secretary of State for companies that are transacting

25   business in the state of Texas but don't have a registered

1  agent in the state of Texas or a physical location.  And so

2  that's why we went in that direction, Your Honor.

3        THE COURT:  And what -- what evidence do you have

4  that HMD is such a company?

5        MR. RAMEY:  The -- the -- that the phones that

6  they offer, the Nokia phones that they offer are offered to

7  sell to everyone in Texas through the various wireless

8  providers and also on the website generally available to

9  anyone in Texas.

10        I would add one other thing, Your Honor, that we

11  have effected service of process through the Hague

12  Convention to the UK entity of HMD Global, and there is no

13  evidence in the record that the phones that they're selling

14  are not made in the UK.  There -- there's just no evidence

15  that that's not proper service for the alleged infringing

16  devices.

17        THE COURT:  Have you sued the UK entity?

18        MR. RAMEY:  We were under the -- we are under the

19  impression that it's the same entity, Your Honor.

20        THE COURT:  Well, if it's the same entity, why

21  would it be subject to service in the UK?  It's my

22  understanding it's organized in Finland?

23        MR. RAMEY:  Yes.  They're -- the parent -- at

24  least there is an entity that's organized in Finland, Your

25  Honor.  We looked at service through the Hague for the

1   Finnish company, and we felt there were other ways to do it

2   that were cost reasonable.  There was a $16,000.00

3   translation fee that would have attached to translating the

4   documents, and that was the -- our guiding reason to serve

5   the UK company because they speak a form of English in the

6   UK, and so that was the guiding principle, because service

7   isn't meant, of course, to -- to foreclose the ability for

8   people to serve process, only to give reasonable notice.

9           I mean, we -- we know HMD is on special appearance

10  here.  But we've cooperated with them.  We had an agreement

11  that they would waive service at one time until we

12  decided that -- and I have an email from -- I can go

13  through the -- the chronology of those events.  We have --

14  until we wouldn't agree that they were improperly joined,

15  then they withdrew their agreement to waive service.

16          THE COURT:  Well, the UK entity is a separate

17  entity from the Finnish entity?

18          MR. RAMEY:  I don't know that, Your Honor, that

19  it's a separate -- I know it's an HMD Global OY entity, and

20  I don't have -- there's no evidence in the record that I

21  know of that the phones that we've accused of infringing

22  are not in part made --

23          THE COURT:  I'm not talking about who infringed.

24  At this point, I'm talking about who you have sued, because

25  what I'm hearing is you have sued a Finnish entity and are

 1   trying to serve it through a UK entity.  Is that what

 2   you're arguing?

 3          MR. RAMEY:  Yes, Your Honor, that is what we're

 4   arguing.

 5          THE COURT:  How can you serve one entity through

 6   another?

 7          MR. RAMEY:  If the other entity is controlling the

 8   service there, that's how we were trying to effect service

 9   on HMD Global OY through the UK entity.

10          THE COURT:  All right.  And do you have -- do you

11   have any legal authority for the proposition that you can

12   serve a parent through a subsidiary or -- which is what

13   this appears to be?

14          MR. RAMEY:  No, Your Honor, we don't.  We -- we do

15   not.

16          But I would add that, as I said earlier, we did

17   send the Texas Secretary of State proper service on the

18   Finnish entity yesterday, and the second part of our

19   response requested an extension of 60 days from the

20   original date you offered for us to -- or ordered us to

21   complete service of March 28th.

22          THE COURT:  All right.  Well, with respect to the

23   service through the Texas Secretary of State, obviously,

24   you understood that that would be -- or that service is

25   contested.

1          Do you have any case law that supports the use of

2   that service through the Texas Secretary of State to serve

3   a foreign entity under these circumstances?

4          MR. RAMEY:  I didn't bring any of the case law

5   with me today, Your Honor, no.

6          THE COURT:  But you believe it exists?

7          MR. RAMEY:  Yes, Your Honor.

8          THE COURT:  And talk to me about the facts, then,

9   about HMD's doing business in Texas.  You're saying HMD

10  sells these phones, or does it simply manufacture them?

11         MR. RAMEY:  Your Honor, HMD, for the limited

12  understanding we have, has a license agreement with Nokia

13  for a period of 10 years to take the plans of the HMD

14  phones and manufacture those phones.

15         The HMD Global name is on the Nokia website.  The

16  Nokia phones are offered for sale through the various Nokia

17  websites, and it says sold -- you know, sold by or

18  manufactured by HMD Global at the bottom.  So, Your Honor,

19  we would contest that that is sufficient evidence that HMD

20  Global is, in fact, selling the phones.

21         THE COURT:  So your evidence would show that -- or

22  your evidence of sales is that the sales are offered

23  through websites that are available around the world,

24  including in Texas?

25         MR. RAMEY:  Yes, Your Honor.  And through -- yes,

1   Your Honor.

2          THE COURT:  Do you have other evidence of -- of

3   activity by HMD within Texas?

4          MR. RAMEY:  Sold through the various wireless

5   networks -- the AT&Ts, the Verizons, some sell the Nokia

6   phones, as well.  We don't believe the there were any on

7   the -- T-Mobile's website when we looked, but -- who's a

8   Defendant in this action.

9          THE COURT:  What you're accusing here are phones

10  manufactured by HMD, and you're saying they're sold through

11  both Nokia and T-Mobile.

12         MR. RAMEY:  Not through T-Mobile, Your Honor.

13         THE COURT:  Okay.

14         MR. RAMEY:  Sorry if I misspoke.  We were not able

15  to locate any for sale on the T-Mobile's website.

16         THE COURT:  What is the relationship between the

17  allegations between HMD and the allegations against

18  T-Mobile?

19         MR. RAMEY:  Yes, Your Honor.  So we have -- the

20  situation is we have various claims related to patents that

21  cover either, one, the wireless network, or, two, the cell

22  phone operating within the wireless network.

23         And so the cell phone that's manufactured is a key

24  component of the system.  The wireless network is -- the

25  components are sold by Nokia.  The wireless network is

1  operated by T-Mobile.

2        There's -- there's no question in our mind, and I

3  don't think HMD or Nokia or T-Mobile is going to disagree

4  with this, that the wireless phones manufactured by HMD

5  Global are not sold to be paperweights.  They're sold to

6  work on a wireless network.  They're sold to work on, for

7  instance, T-Mobile's wireless network.  T-Mobile's wireless

8  network uses Nokia parts, as we've shown in our

9  infringement contentions which have been served on all the

10  parties.

11        So this is -- this is the same transaction or

12  occurrence, Your Honor.  This is -- I mean, these phones

13  are sold for the very particular purpose of working on the

14  wireless networks that we've accused of infringing.

15        THE COURT:  Well, is there any difference between

16  the role of HMD cell phones in this infringement and any

17  other cell phones?  In other words, could you also include,

18  based on the same theory, any manufacturer of cell phones?

19        MR. RAMEY:  Yes, Your Honor, in our opinion, we

20  could.

21        THE COURT:  Okay.

22        MR. RAMEY:  The claims -- the claims of the --

23  Your Honor, I know we have other pending cases in the

24  Court, so just a little bit of clarification if I may.

25        The claims of some of the patents involved in this

1  action are different than the claims involved in -- in some

2  of the other actions, that they actually are drawn more to

3  the workings of how the phone interacts with the wireless

4  network.

5       One of the -- the issues that we talked about

6  previously was that it wasn't a necessary component for

7  infringement other than just being a generic component.

8  Here, it does have to be a specialized component in -- in

9  the '388 patent and the '196 patent, at least, and probably

10  also in my opinion the '353 patent.

11       THE COURT:  Well, show me the evidence that you

12  have in the record now about service on HMD through the

13  Texas Secretary of State, about that being complete.

14       MR. RAMEY:  Yes, Your Honor, we -- as I mentioned

15  to the -- to the Court, we -- we served and we filed with

16  the Court through the Texas Secretary of State -- pardon

17  me, Your Honor.  If I can open this up quickly -- two weeks

18  ago, and I don't have the exact date on this document, that

19  we had served through the Texas Secretary of State -- we

20  were surprised and I was not happy to receive the reply

21  from HMD that we had to serve through the Texas Secretary

22  of State that time the original complaint.

23       We have since filed a First Amended Complaint, and

24  so the record evidence we have of service with the Texas

25  Secretary of State is not in the file yet because it was

1  only effected yesterday, Your Honor.

2         And so the question becomes whether or not service

3  of the original complaint would have been -- put them on

4  notice, and our contention would be that service of the

5  original notice, which they've admitted in the record

6  through their reply document as having received, but the

7  fact that -- that it contained the original complaint.

8  That, we would think, puts them on reasonable notice of the

9  complaint, and we have kept Mr. Mc -- I'm sorry, kept

10  Defendant on notice through their counsel, Mr. McCabe, of

11  everything we filed.

12         And on 4/17, pursuant to the Court's docket

13  control order, we did serve our infringement contentions on

14  HMD Global.

15         THE COURT:  Do you have copies with you of the

16  evidence that you're referring to that you just got of

17  proper service of the amended complaint through the Texas

18  Secretary of State?

19         MR. RAMEY:  No, Your Honor.  I was already on the

20  way up here by the time that that was mailed out, that

21  document was mailed.  I do have an email copy showing that

22  the -- that proper postage was placed on the document, but

23  I don't have a printout for the -- for the Court.

24         THE COURT:  And what this would show is that it

25  was mailed to the Secretary of State or from the Secretary

 1  of State.

 2          MR. RAMEY:  To the Secretary of State, Your Honor.

 3  I believe service is not effective until process has been

 4  issued by the Texas Secretary of State, which usually, in

 5  our experience, takes one to three days for them to put

 6  together.

 7          This is about 500 pages, big, large, thick

 8  document.  So I assume it would take them between two to

 9  three days, Your Honor.

10          THE COURT:  All right.  Thank you, Mr. Ramey.

11          Let me hear from Mr. Moffa.

12          MR. RAMEY:  Thank you, Your Honor.

13          MR. MOFFA:  Thank you, Your Honor.  And may it

14  please the Court.

15          I think Mr. Ramey's presentation has narrowed the

16  issue substantially.  I think I'm hearing Mr. Ramey concede

17  that the service that he effected on the Secretary of State

18  previously was not proper.  I think he's only relying on an

19  alleged service of our UK entity and then apparently a

20  package that was mailed yesterday that he has not yet

21  presented to the Court nor presented to us.

22          In brief, our position is that Your Honor set a

23  very reasonable schedule the last time that we were here,

24  which was that Mr. Ramey was to effect service on a date

25  that is six months after the filing of this complaint and

1  that other dates in the case schedule were to proceed

2  accordingly based on service by that date.

3           Service was not effected by that date, and

4  Mr. Ramey had an opportunity to effect service, Traxcell

5  had an opportunity to effect service and didn't.

6           Briefly, Your Honor, you -- to the argument that

7  we can be served through the Secretary of State, you asked

8  Traxcell's counsel what authority there is for service

9  through the Texas Secretary of State, and he pointed to

10 Rule 4.

11          Your Honor, if I can just clarify, the portion of

12 Rule 4 -- and this is mentioned in our reply brief at Page

13 2 -- the portion of Rule 4 that permits service following

14 state law for service of a summons in an action is Rule

15 4(e).  That's the rule for serving an individual within a

16 judicial district in the United States.

17          Now, that's incorporated in Rule 4(h), which says

18 you can serve a corporation, partnership, or association in

19 a judicial district of the United States in the manner

20 prescribed by Rule 4(e)(1).

21          However, Rule 4(f) -- (m) says that there's a

22 90-day time limit for service in the United States, except

23 for service under Rule 4(f), 4(h)(2) or 4(j)(1).

24          So I'm sorry to thread you through this.  But

25 there is no exception for service 4(h)(1)(A) incorporating

1  Rule 4(e)(1).

2      And that makes sense.  The exception to the 90-day

3  time limit in Rule 4(m) is there because everybody agrees

4  it takes a while to serve a company under the Hague

5  Convention overseas.  It doesn't take a while to serve them

6  under the Secretary of State.

7      And if Mr. -- if Traxcell, pardon me, had intended

8  to serve us under the Secretary of State, they could have

9  done so in September.  They could have done so well before

10 Your Honor's deadline of March 28th.  There's no reason and

11 no justification to excuse them a third time, and yet again

12 extend a deadline for us to be served under that method.

13     I also just want to say, Your Honor, that -- and

14 this is a -- I want to be delicate about this topic, but

15 Traxcell's counsel is making representations to Your Honor

16 about what was provided to the Secretary of State.  And at

17 least two times now in this case, affidavits have been

18 submitted to the Court under oath about actions that have

19 since been repudiated.

20     So Mr. Ramey's processor server submitted an

21 affidavit on March 29th that said that there's a, you know,

22 improper method -- or informal of method of service that's

23 proper, and it constitutes mailing something by FedEx, and

24 I did that on the 28th.

25     However, the evidence we put in shows that wasn't

1   mailed until the 1st of April.  And in his following

2   affidavit, Mr. Ramey concedes that he knew on March 29th

3   that service was improper, the same day that he filed that

4   affidavit in this Court.

5          And just so I'm not -- I'm not making statements

6   outside the record, I would -- I would point to Mr. Ramey's

7   individual affidavit that -- that he filed.  This is Docket

8   49-2 on -- Paragraph 7, where he says my firm contracted

9   with a third party for service.  On March 29th, my firm

10  learned service was not performed properly under the

11  federal rules.

12         However, for a month after, Mr. Ramey did nothing

13  to remove that affidavit from the record.  Had we not

14  objected, he may well have left in an affidavit by this

15  process server saying that service was correct.

16         Now, Your Honor, I also point to Paragraph 8 in

17  that same affidavit where Mr. Ramey represents that -- he

18  says, I -- I then served personally through the Texas

19  Secretary of State the First Amended Complaint and the

20  proper summons.

21         Your Honor, that's incorrect, and Mr. Ramey

22  provided no evidence of that, but we provided a copy of

23  what went to the Secretary of State and what we received at

24  our Finnish entity, and it was not the First Amended

25  Complaint.  And I believe I heard Mr. Ramey admit that

1   here.  When -- when you asked him was service effected

2   properly, he -- he said, well, I -- I now realize I sent

3   the wrong complaint.

4        So I would respectfully ask Your Honor not to give

5   weight to representations by counsel about what has been

6   given to the Secretary of State, if only because twice now

7   he has made representations under oath that -- that

8   aren't -- aren't correct.

9        THE COURT:  Well, Mr. Moffa, other than the timing

10  issue, which I understand, do you contend that service

11  through the Texas Secretary of State is not legally proper?

12       MR. MOFFA:  Well, I haven't seen the authority

13  that Mr. Ramey says that he is aware of, and I don't see a

14  reason why that couldn't have been presented to the Court

15  at any time until now.

16       So I feel as a -- as a legal matter, there --

17  there may be mechanisms for serving a foreign entity

18  through the Secretary of State.  However, the -- the

19  mailing of that service from the Secretary of State still

20  has to comply with the Hague Convention because it's a

21  transmittal of documents abroad, and there's certainly

22  authority for that proposition.

23       And in that sense, I cannot say whether

24  Mr. Ramey's service through the Secretary of State this

25  time is proper because we haven't seen how the documents

1   are being delivered to Finland.

2          THE COURT:  In -- in what way would the Hague

3   require that documents be delivered?  Are you saying they

4   would have to be translated or --

5          MR. MOFFA:  No, there's -- there's not a

6   translation requirement.  But they -- they would have to be

7   mailed within the right process.  I believe that the

8   Secretary of State used registered mail last time, and that

9   would be proper, but, again, we would have to make sure

10   that the documents that are sent are legally operative, and

11   there's no evidence of what documents are being sent.

12          Your Honor, on multiple occasions, our client has

13   been sent the wrong summons, an unsigned summons, an

14   unsealed summons.

15          So if you're asking me as -- as an officer of the

16   Court to represent that there may be a mechanism under

17   which the right documents are sent in the right way to the

18   Secretary of State and the Secretary of State serves in

19   Finland and the -- the Plaintiff shows that the party being

20   served transacts business within the meaning of the Texas

21   Long-Arm Statute, there probably is a way to turn all of

22   those locks.  But it's hard to discuss hypotheticals when

23   Plaintiff hasn't presented any evidence to the Court for us

24   to even look at.

25          THE COURT:  Well, what would be the advantage of

1  dismissing the claims against HMD without prejudice at this

2  point?

3          MR. MOFFA:  Well, Your Honor, as we stated in our

4  brief, our view is that we're improperly joined in this

5  matter.  So at least it would save the Court and the

6  parties the issue of briefing joinder if we were in a

7  separate case.

8          I think it also would put Plaintiff to the task of

9  providing proper infringement allegations.  I think Your

10  Honor did an excellent job of asking the question, you

11  know, is there any difference between the way HMD phones or

12  any other phones operate under his infringement

13  allegations?  And, Your Honor, plainly he -- he said any

14  other phone would do.

15          I would also point Your Honor to the complaint in

16  the case, which does not distinguish between the -- the

17  roles of Nokia or HMD or T-Mobile or any other Defendant

18  and makes no allegations of joint infringement or divided

19  infringement.  So there -- it would also clarify what

20  allegation, if any, is being made against HMD.

21          Your Honor, those -- those are prudential

22  concerns.  In the sense, they're saving the Court time of

23  hearing those briefings, and they're saving the parties the

24  issue.  I would also just say, Your Honor, that it's the

25  proper result.  A party is entitled to -- a foreign company

1   is entitled to demand service of process, and the Court

2   doesn't have jurisdiction until they do.

3        If the Court doesn't have jurisdiction over us and

4   if the Plaintiff has received multiple reasonable

5   opportunities over seven months to effect that service, for

6   the authorities that we provided in our -- our brief,

7   dismissal is the appropriate outcome, and, again, if

8   Plaintiff wants to come back with a new complaint against

9   us and properly serve it, we will submit to the Court's

10  jurisdiction and be back here for our own schedule.

11       THE COURT:  Talk to me about the improper joinder

12  theory that you have.  I -- because that's been referred

13  to, but there hasn't been any briefing on that issue that

14  I'm aware of.

15       MR. MOFFA:  You're exactly right, Your Honor, and

16  that isn't for wishing to withhold it from the Court.

17       Raising objections of joinder would potentially

18  constitute an appearance in the case, and because we

19  haven't been served yet, we simply haven't had the

20  opportunity.  I would look forward to presenting in -- in a

21  written motion our positions on it.

22       Your Honor, this is an issue that we have

23  attempted to air out with Plaintiff.  We were ordered to

24  meet and confer about joinder.  Plaintiff sent us some

25  emails.  We explained that under the local rules, we

1   understood that requirement to be a telephonic meet and

2   confer, especially if we're going to move for misjoinder,

3   but we never got a phone call back, so we actually haven't

4   had the chance to confer.

5          But -- but I will represent that the position is

6   essentially 35 U.S.C. 299, what was amended, to clarify

7   that there are proper and improper joint Defendants in a

8   case.  And unless the Plaintiff alleges an actual acting in

9   concert or a divided or -- or joint form of infringement

10  where it's clear that one party is -- is creating the

11  direct infringement, it's improper to have the parties

12  joined as Defendants.

13         Otherwise, Plaintiff, as you rightly note, the

14  Court could add every cell phone manufacture to this suit,

15  put them all in a row, and claim to be able to bring them

16  all in because any cell phone will work in his network.

17         Just like a party that has a patent for a traffic

18  control device could add every car manufacturer and say,

19  well, your cars work on my roads, your cars go through my

20  stop light, so I'm entitled to have you as a Defendant in

21  the case.

22         The -- the fact is HMD uses the Nokia brand name,

23  and that's it.  And so when a Nokia phone -- I'm sorry,

24  when an HMD phone is in one area, it might be on a Nokia

25  tower, when it's in another area, it might be on an

1  entirely different manufacturer's tower.  When I bring my

2  Nokia phone to Texas, I might be on T-Mobile's network.

3  When I bring my phone to Louisiana.  I might be on AT&T's

4  network.  It doesn't matter.  There's nothing tying the two

5  parties together other than the fact that we have a license

6  to use Nokia's name on the phone.

7        So for that reason, there's just no difference

8  between HMD and any other cell phone manufacturer, and that

9  is not a sufficient basis for joinder today, whether or not

10  it may have been under the former version of 35 U.S.C. 299.

11        THE COURT:  And one of the things that's been

12  referred to in some of the briefing is the question of

13  severance.  If the claims against HMD were severed from the

14  claims against the other Defendants in this case, would

15  that address the misjoinder issue that you've raised?

16        MR. MOFFA:  If -- if we were severed into a

17  separate action and properly served, that would address

18  the -- the joinder issue that we have raised.

19        But, Your Honor, I just -- I respectfully submit

20  that with -- without some sort of fee shift, there's really

21  no way to unbake that cake.  I mean, if you -- if you look

22  at the exhibit that we provided, this is Docket 44-5, so

23  this is Exhibit 4, this is the email conversation that we

24  had, I don't know if this is what Mr. Ramey was referring

25  to when he said that we agreed to waive service.  To my

1  knowledge, we have never agreed to waive service.

2       But this was in February.  And, Your Honor, in --

3  in February, we explained our joinder issue to -- to

4  Traxcell.  We explained the issues of summons and service,

5  but we said if you agree to file a consent motion to sever

6  HMD Global from the suit or dismiss us and file a new suit

7  against us, we would agree thereafter to waive service for

8  HMD Global, and then we put what I believe is a very

9  reasonable condition, which is we get infringement

10  contentions directed to HMD, as would be required in a

11  separate action against HMD, and we get 90 days to serve

12  our invalidity contentions.

13       Your Honor, had Traxcell taken us up on that offer

14  and had he served infringement contentions, say, two weeks

15  afterwards, our invalidity contentions would be due earlier

16  than they are under Your Honor's proposed schedule.  This

17  all would have been fine.

18       Traxcell deliberately chose not to and has then

19  presented misrepresentations to the Court on multiple

20  occasions, which only we provided the correct evidence for.

21  Only HMD.  I -- my client has spent significant money and

22  time in the interest of putting a correct factual record

23  before the Court under Mr. Ramey's proposed approach to the

24  case.

25       I think now that he has made that choice, it would

1    be unfair to sever us, you know, allow the case to proceed

2    without proper service, and leave us holding the bill for

3    having put the facts in the case that were Plaintiff's

4    burden to put in.

5         And, Your Honor, I don't want to cast aspersions

6    at Mr. Ramey.  So if -- if he wants to represent what he

7    would have done about those incorrect affidavits, incorrect

8    briefs in the absence of our presence, we certainly

9    should -- should hear from him.

10        But my impression based on what's happened so far

11   in this case is that Traxcell would have been happy to let

12   those rest, would have been happy for the Court to

13   incorrectly believe that it had taken jurisdiction over

14   this matter and that we had been properly served and to put

15   us on a rapid time table.

16        What you're proposing, Your Honor, was a

17   reasonable offer, but, respectfully, we made that offer,

18   and Plaintiff declined it.  I don't see why there's a

19   second bite at that apple.

20        THE COURT:  Well, I don't intend to let the case

21   proceed against HMD without proper service.  So, you know,

22   whether you work out some arrangement whereby you waive

23   that, that's completely up to you and your client.  But

24   what I'm trying to figure out is whether it would be more

25   fair to sever the claims out as opposed to dismissing for

1   failure to serve timely.

2          I'm -- after reviewing the record and the

3   affidavit of the process server, I think that while the

4   initial attempts to make service were misguided, once the

5   Court got involved in it, I think serious efforts were

6   made.  They just have not yet, as far as the record shows,

7   been successful.  But I don't think it's in the category of

8   cases where dismissal would be the appropriate remedy.

9          But I -- I haven't yet heard what I would consider

10  an acceptable answer from the Plaintiff about the joinder

11  issue.  So let me get Mr. Ramey to respond on that point.

12         I thank you, Mr. Moffa.

13         MR. MOFFA:  Thank you, Your Honor.

14         THE COURT:  Mr. Ramey, tell me how your claims

15  against HMD are properly joined with those against Nokia

16  and T-Mobile under Section 299.

17         MR. RAMEY:  Yes, Your Honor.  This is the same

18  transaction or occurrence.  They sell the phones

19  specifically to work with the components sold by Nokia on

20  T-Mobile's wireless network.  So this is the same

21  transaction or occurrence.

22         THE COURT:  What -- don't they also specifically

23  manufacture them to work on everybody else's networks?

24         MR. RAMEY:  Yes, Your Honor.  They -- they do.

25         THE COURT:  So your argument would be the same for

1    a Chinese cell phone manufacturer or anyone else?

2            MR. RAMEY:  Potentially.  This -- this case is

3    different than the other cases before the Court because the

4    claims are drafted to covering the wireless device,

5    wireless communication device, the base claims, rather than

6    covering what we have before us, in essence a first

7    computer with a SON program that was connected to these

8    various components.

9            Now we're talking about a cell phone that is

10   specifically constructed to work in a prescribed manner.

11   And then that's why it's a different case, and work,

12   therefore, on the wireless network.

13           THE COURT:  Aren't all cell phones specifically

14   manufactured to work in accordance with the standards?

15           MR. RAMEY:  Not -- no, Your Honor.  In fact, these

16   cell phones have to be -- have to be able to take in

17   mapping information from the wireless network, have to be

18   able to process the mapping information.  So this is very

19   different than -- than a cell phone working as a cell

20   phone.  This is providing navigation.

21           Not all cell phones can provide navigation.  There

22   would be some that wouldn't.  It's more -- it's more if

23   you -- I think the terms they use these days is smartphone,

24   but you could do it with a -- with a laptop or a Surface or

25   whatever, as well.  But not all cell phones, Your Honor,

1  no.  There are specific requirements for the cell phone to

2  be an infringing cell phone, so it wouldn't include all of

3  them.

4          THE COURT:  Well, Mr. Ramey, before I can decide

5  the question of whether you've complied with your

6  obligation to serve HMD, I'm going to need to see the

7  documents that you are contending will satisfy that

8  service, which haven't yet been issued by the Secretary of

9  State to HMD.

10         I'm also going to have to see the authority that

11  you're relying on through the Texas statutes and have you

12  cite to that.  And with respect to the joinder issue, I

13  will want to see what authority you have, that 299 should

14  be understood in the way you're suggesting that a cell

15  phone that is designed to, like many cell phones, work

16  within the networks that are operated by T-Mobile and I

17  guess the equipment of Nokia, that that would constitute

18  them beating -- being part of the same transaction or

19  occurrence.

20         And I'm just -- I haven't had that issue before

21  me, but I'm -- since the whole matter has been delayed for

22  this service issue, I don't see why we shouldn't get that

23  joinder issue resolved at the same time and decide whether

24  the claims against HMD, if you make proper service, should

25  go forward in the same or a separate action.

1          I get the sense that part of what is motivating

2    HMD is the question of prevailing party, and if HMD is

3    successful in this matter being dismissed, I guess that

4    will present other issues.  So I think this is a decision

5    that has other consequences.

6          Let me hear from Mr. Jones as to the position of

7    Nokia and T-Mobile on this issue of severance or not.

8          MR. RAMEY:  Thank you, Your Honor.

9          THE COURT:  And Mr. Jones, I'm -- I'm just trying

10   to find out if your clients have a position on this or

11   whether -- I know you have a 12(b)(6) motion, but --

12         MR. JONES:  Yeah, the position that -- that both

13   T-Mobile and Nokia have on this really is -- is the motion

14   to dismiss, which we have on file with the Court, which

15   involves many of the similar issues, because the

16   allegations against us, as pleaded and as clearly have been

17   pointed to in our motions, is that they don't point out

18   particular devices that contain claim limitations as

19   required.

20         And -- and that's been -- I think with regard to

21   the joinder issue has been one of the bases of the problem

22   here is that we really can't tell from looking at the

23   pleadings what the accused devices are and where we find

24   the limitations in the accused devices.  And the pleadings

25   approach it in a very simplistic fashion, which is

1   basically, we have cell phones in a network, and they do

2   all these things, and they violate the rights of the

3   patentholder.  But we don't specifically point out how

4   these are done by the various entities sued nor by the

5   various accused products.

6         And I would submit to the Court you really can't

7   figure out what the accused products were, which -- and

8   that's the argument basically with regard to direct

9   infringement.

10         With regard to induced infringement, as the Court

11  well knows, there are further requirements that, again, we

12  contend are not there.  And then, finally, with regard to

13  willfulness, we don't think the allegations are pled there

14  with sufficiency to state the cause of action.

15         With regard to the service issue, as well as with

16  regard to the joinder issue, we really haven't taken a

17  position in the matter.  I -- I think -- except for to

18  point out that the underlying pleadings cause a lot of

19  problems in this regard.

20         I think that we are totally content with whatever

21  the -- schedule the Court puts us on if it wants to take

22  time to resolve this matter.  You know, obviously, it's

23  going to have an effect on the schedule, but other than

24  that, I would have to say we don't have a position.

25         THE COURT:  All right.  I thank you for that.

1          The original complaint was against HMD and Nokia,

2     and it was T-Mobile that was added in the amended

3     complaint, is that right, Mr. Jones?

4          MR. JONES:  Yes, I believe that's correct.

5          THE COURT:  All right.  So you represent one of

6     the original Defendants, as well as the -- the newly added

7     Defendant, T-Mobile?

8          MR. JONES:  That is correct, yes, sir.

9          THE COURT:  All right.  Thank you.

10         Mr. Ramey, you know, this is not a case where I

11    think the Plaintiff has ignored its obligation to make

12    service.  I will say it's a case where it has not been

13    handled very well.

14         MR. RAMEY:  Sure.

15         THE COURT:  But I -- my inclination is to give you

16    an opportunity to complete service.  I think that's the

17    primary interest of HMD is that it be properly served

18    before it has to go forward with anything else.

19         I've already given one opportunity for that.  It

20    appears, based on the affidavit of your process server,

21    that it just wasn't enough time given the international

22    nature of this case to get it done.  But it sounds like you

23    are staking your case on this Texas Secretary of State

24    service.  You're -- you have not begun service under the

25    Hague?

1          MR. RAMEY:  Not of the other entity.  We -- we

2    will have started that by the time -- within an hour of me

3    leaving this courtroom, however, Your Honor --

4          THE COURT:  Well --

5          MR. RAMEY:  -- the Hague service.

6          I -- the -- if I -- if I can add a little bit

7    about the discussion, Your Honor, we had with the

8    third-party process server.  One of the ways it can be, we

9    thought or we understood, was that they could do some sort

10   of personal delivery service in Finland, so that's why we

11   contracted with this third party.

12         They say said that's what they were going to do,

13   and it wasn't until we received back the FedEx mailing from

14   them that we realized that they hadn't done what they said

15   they would do.

16         THE COURT:  How does that jive with the treaty

17   obligations under the Hague if you can just get around

18   those by having a personal delivery made?

19         MR. RAMEY:  Your Honor, the Hague Convention says

20   anything that's allowed under Sweden, and my recollection

21   is that -- that the laws of Sweden would have allowed that

22   personal delivery by a personal person.

23         THE COURT:  Is this Sweden or Finland?  What are

24   we --

25         MR. RAMEY:  Well, pardon me -- did I say -- pardon

1  me, Finland, Your Honor.

2           THE COURT:  All right.

3           MR. RAMEY:  I'm sorry.  Yes, my apologies.

4           But that was -- my understanding is that the

5  research showed that, and so that's why we had gone with

6  the -- with this particular method of service.  It

7  wasn't -- as soon as we learned it was wrong, we did file

8  the declaration providing that it was wrong.  We didn't --

9  we weren't trying to misrepresent anything to the Court,

10  and on that -- on that vein, if I may -- well, never mind,

11  Your Honor.  There's -- we have -- Mr. McCabe, lead counsel

12  for Defendant, HMD Global, and I have probably 50

13  communications back and forth on this -- on these issues,

14  so...

15           THE COURT:  Well, tell me how much time you need

16  to file into the record proper -- what you consider to be

17  evidence of proper service through the Texas Secretary of

18  State.

19           MR. RAMEY:  Yes, Your Honor.

20           Your Honor, sorry, I'm trying to figure out -- we

21  served the Texas Secretary of State on 4/8.  They didn't

22  get back with us with -- showing that service had been made

23  for two weeks.  So I don't anticipate that they'll be able

24  to get back with us much -- much sooner than that now, Your

25  Honor.

1         We would be willing, if it was easier for the

2    Court, to file an amended complaint and start the service

3    over again if that -- if the Court would prefer that.

4         THE COURT:  Why -- why would that help?

5         MR. RAMEY:  I don't think it would, Your Honor.

6    We're -- we --

7         THE COURT:  Okay.  Then I decline that offer.

8         MR. RAMEY:  Yes, Your Honor.

9         The -- I'm hesitant to say because I don't know

10   when the witness certificate will be sent back to our

11   office.  That's all I don't know, Your Honor.  We had asked

12   for 60 days, which would put us until -- I believe, Your

13   Honor, was May 27th or May 28th, maybe -- whatever -- 27th.

14   I would think that if we could have until then, that should

15   be sufficient time.

16        THE COURT:  Well --

17        MR. RAMEY:  That was the relief we requested in

18   the original response.

19        THE COURT:  -- the date that we pick now will be a

20   date by which you'll file your evidence, you'll file a

21   brief addressing the use of the Texas Secretary of State

22   for service in this situation, and addressing the joinder

23   issue raised by HMD.

24        And I'll give time for HMD to respond to those,

25   and I'll take it up.  And -- and if I decide that your

1   service is still not enough, then I'll grant HMD's request

2   to dismiss, and you can do whatever you want to do after

3   that, but I think that's an adequate time.

4        If -- I'll also take up the joinder issue there.

5   If -- if I conclude that your service is proper, then I'll

6   take up the question of whether it should be severed or

7   not.

8        MR. RAMEY:  Yes, Your Honor.

9        THE COURT:  And with respect to the claims against

10  Nokia and T-Mobile, they'll just await the decision on how

11  the case goes forward, but do you have any questions about

12  what is required of you under that schedule?

13       MR. RAMEY:  No, Your Honor, I wrote it down.

14       THE COURT:  Okay.  Mr. Moffa, I know that your

15  preference would be for dismissal at this time.  I think

16  under the circumstances of this case, the Court's

17  discretion should proceed in the manner that I just

18  outlined.  But if you have anything else that you think the

19  Court needs to take into account, I'll be happy to hear

20  from you.

21       MR. MOFFA:  Yes.  Yes, Your Honor, briefly.

22       And -- and HMD takes no issue with Your Honor's

23  exercise of discretion in its determina -- the Court's

24  determination what -- what's proper timing for a motion to

25  dismiss.

1          My concern, Your Honor, is that my client believes

2     that to date, the Court does not have jurisdiction over the

3     matter, and my -- my client intends to preserve that

4     defense to the fullest, including a collateral attack on

5     any judgment that might be issued in the case.

6          Now, Your Honor's proposal, if I understand it, is

7     that Plaintiff is going to file evidence of service within

8     60 days and a brief addressing the use of the Texas

9     Secretary of State, and then a brief on the joinder issue.

10         If -- our client could be put in an untenable

11    position, which is do not respond to that brief to preserve

12    its jurisdictional defense or respond to the brief and

13    thereby waive its jurisdiction by entering an appearance on

14    a substantive matter.

15         And like I said, Your Honor, the reason that we

16    have not briefed the joinder issue in full to date is

17    because we are preserving the defense that we're -- we're

18    not properly here.  And five years from now if Mr. Ramey

19    has a judgment and wants to enforce it, my client has the

20    right to preserve its defense that the Court has not yet

21    taken jurisdiction.

22         So for that reason, Your Honor, a dismissal of the

23    case and a restarting of -- of a proper case with proper

24    service and addressing the joinder issue thereafter, if

25    there is a mechanism to do that, would allow my client to

1   preserve that defense.

2          So I think this is an unusual situation, Your

3   Honor, and perhaps one where while the prudent solution,

4   which is to give the Plaintiff more time and to try and get

5   these issues briefed because the case is getting long in

6   the tooth, just may not be properly effected.  And I don't

7   want to consent to my client agreeing to respond on

8   substantive matters before the -- the Court has taken

9   jurisdiction.

10          In that sense, although, again, we respect and

11   take no issue with Your Honor's exercise of discretion,

12   that should be a consideration in what Your Honor decides

13   to do with the matter.

14          THE COURT:  Well, I understand that, and I don't

15   think that this is a situation where your concern would be

16   alleviated by some statement or order from this Court that

17   it would not be concerned a waiver.  What you're concerned

18   about is what some other Court might do in the future if

19   you collateral attack a judgment?

20          MR. MOFFA:  Exactly, Your Honor.

21          THE COURT:  All right.

22          MR. MOFFA:  I think a dismissal and re-filing

23   would be clear as to whether the matter was commencing with

24   proper service or not.

25          THE COURT:  Well --

1        MR. MOFFA:  I don't think --

2        THE COURT:  -- under the circumstances, I'll just

3   say that I will only expect a brief from you responding to

4   the service issues.

5        If -- if we end up not severing the claims and you

6   continue to believe that that's wrong and, you know, if HMD

7   continues in this case, in other words, the service

8   question is decided in favor of the Plaintiff, then you can

9   always raise the misjoinder issue after that, and that way

10  you won't run the risk of waiving your jurisdictional

11  issue.

12       Unless what you're telling me is that you think in

13  order not to waive the personal jurisdiction issue, you

14  need to refrain from any further participation in this case

15  regardless of what's decided on the sev -- on the service

16  issue.

17       MR. MOFFA:  Your Honor, that's a difficult

18  question to answer.  I think we -- we have done what the

19  case law makes clear is not an appearance.  We can contest

20  jurisdiction under 12(b)(4) and 12(b)(5).

21       We did that under Your Honor's reasonable schedule

22  with reasonable time.  Because of Plaintiff's dilatory

23  tactics and Plaintiff's responsibility alone, we're now in

24  the position where I'm being asked whether a second filing

25  on a more, you know, substantive matter of service, which

1  would not be an initial motion to dismiss, the one thing

2  that the Court says, you know, you may do, the Fifth

3  Circuit has said you may do without waiving your right of

4  appearance, you know, is that proper?  And, again, this is

5  a case where my representation wouldn't suffice for a

6  foreign Court to address the -- the issue later.

7        So, Your Honor, I -- I do not know standing before

8  you whether we could contest that.

9        And my fear is that if we think it's in our

10  client's best interest to sit and make no response and

11  allow the Court to sort it out, how do we know that

12  Mr. Ramey is going to make a proper representation to the

13  Court of what has happened when twice now in this very case

14  he has failed to do so?

15        THE COURT:  Well, those are hard questions that

16  you'll have to figure out with your client.  But if you

17  choose not to respond, then I'll make the best decision I

18  can on the record that I have.  But I -- whatever position

19  you think you need to take, I will not hold it against you,

20  so --

21        MR. MOFFA:  Thank you, Your Honor.

22        THE COURT:  But I will say the date, May the 27th,

23  the date Mr. Ramey was referring to, is Memorial Day.  So

24  I'll set this at -- as May the 28th, and we'll go forward

25  on that basis.

1          And I will simply say in the order that any brief

2     that HMD does decide to file should be filed within some

3     period after that.

4          Is two weeks adequate if you do decide to address

5     the issue?

6          MR. MOFFA:  Yes, Your Honor.

7          THE COURT:  Okay.

8          MR. MOFFA:  Your Honor, may --

9          THE COURT:  Go ahead.

10          MR. MOFFA:  To make a clean record going forward,

11    could we get a representation from Plaintiff that Plaintiff

12    is not relying on the prior six methods of service?  I

13    mean, Your Honor, I have spared the Court of addressing

14    this question of service on the UK entity.  We certainly

15    have a view on that.

16          In the papers, it's clear that we were not issued

17    a proper summons at that time, and so for that reason

18    alone, that wasn't effective service.

19          Also, Traxcell previously represented to the Court

20    that service had not been effected under the Hague prior to

21    May 28th, then in kind of an a about-face, Traxcell took

22    the position, oh, we now know that we did effect service.

23          So can we just set a clear record that we no

24    longer have to address the six previous attempts at service

25    because the -- the Court understands those were not

1  effective service and is giving Plaintiff an opportunity to

2  file evidence of new service on the Secretary of State by

3  May 28th?

4       THE COURT:  All right.  Let me get Mr. Ramey to

5  address that.

6       MR. MOFFA:  Thank you, Your Honor.

7       THE COURT:  Thank you, Mr. Moffa.

8       Is that the Plaintiff's position that we are going

9  forward in reliance upon the service that is underway at

10  this time through the Texas Secretary of State?

11       MR. RAMEY:  Your Honor, we're not going to -- we

12  will do further research.  We didn't come prepared to

13  assist the Court today whether the previous service under

14  the Hague Convention was proper.  We will research that to

15  verify to establish that it was not proper.

16       So we don't want to just -- to throw away that

17  service on that entity.  But -- but we -- but we're not

18  going to -- we're going to rely on what we served on the

19  Secretary of State yesterday, as well, Your Honor.

20       THE COURT:  Well, let's just talk about that for a

21  moment.  You're saying that you served this UK entity

22  through the Hague?

23       MR. RAMEY:  Yes, Your Honor.

24       THE COURT:  But you agree that that is a different

25  entity from the entity you have sued?

1          MR. RAMEY:  I don't know that as I stand here,

2     Your Honor, what -- the corporate arrangement of HMD Global

3     OY.  That's all we wanted -- we want to flesh that out for

4     the Court so we don't misrepresent -- so nothing is

5     misrepresented.

6          And if -- and if we can't establish it in our

7     favor, we will -- we will gladly make that appear in the

8     briefing so that HMD doesn't have to address that issue.

9     We're not trying to increase anyone's cost here, Your

10    Honor.

11         THE COURT:  All right.  Well, in the filing that

12    you make on May 28th that includes the evidence of service

13    through the Texas Secretary of State, you should also

14    address your theory on the service through the UK entity

15    and any evidence you have that the UK entity is the same

16    entity that you have sued here.

17         I can tell you I'm skeptical that you can serve a

18    company organized in Finland through a company organized in

19    the UK.  But I will allow you to address that issue in your

20    May 28th brief.  But you should either give me what you

21    believe are persuasive authorities and evidence on that, or

22    simply acknowledge that you don't have them.

23         MR. RAMEY:  Yes, Your Honor.

24         THE COURT:  All right.  Mr. Moffa, I know that's

25    not exactly what you're after, but I think that we have at

 1   least narrowed it down to those two efforts at service, and

 2   it should be clear to you in the brief that the Plaintiff

 3   offers on May 28th what their position is.  If it's not,

 4   then before you file your brief, feel free to contact the

 5   Court to get a further definition of the Plaintiff's

 6   position before you file your brief.

 7           MR. MOFFA:  Thank you, Your Honor.

 8           THE COURT:  All right.

 9           MR. RAMEY:  Your Honor, may I --

10           THE COURT:  Go ahead.

11           MR. RAMEY:  May I address one -- do you -- do you

12   still want Plaintiff to address the joinder issue in its

13   initial briefing?

14           THE COURT:  Yes, and I'll put that in an order so

15   that it will be clear.  But, yes, I do.

16           MR. RAMEY:  Thank you very much, Your Honor.

17           THE COURT:  Because whether these cases stay

18   together or not is an issue that's important regardless of

19   your service of process.  So I do want to get that

20   addressed.

21           I won't enter any further schedule at this time.

22   I know that the order that the Court issued setting this

23   conference up did have a few dates following the

24   conference.  I don't know if those imposed obligations that

25   the parties want the Court to revisit.

1        In other words, do either of defense counsel want
2 to address that issue?  If so, I'll take it up.
3        MR. JONES:  Your Honor, if you could, and I was
4 about to ask this, does -- I assume Your Honor contemplates
5 that we may well have another hearing on this -- on this
6 issue after that briefing is done, and if that were to
7 occur, could we also set our motion to dismiss at the same
8 time?
9        THE COURT:  I would think so.  I'm not at this
10 point planning to set another hearing right away on that.
11 I'm hoping that I'll be able to just take it up on the
12 briefing, but once we figure out whether these Defendants
13 are going to stay on the same track, we can figure out how
14 best to address T-Mobile's motion.
15        MR. JONES:  And our request would be that until,
16 number one, we -- we figure out how we're going and the
17 posture of the case, that -- that the dates be stayed until
18 that be done, and I do think with regard to the joinder, as
19 well as some of the other issues that have been raised
20 today, it would make all kinds of sense to deal with the
21 motions to dismiss at the same time the joinder issue is
22 being dealt with, and then come up with the appropriate
23 schedule for the case, and that would be our request, Your
24 Honor.
25        THE COURT:  Let me see what the deadlines were

44

1   that were set following this.  Oh, all right.  Yeah, I will

2   go ahead and vacate that prior order that was entered on

3   February 26th that set this conference because, obviously,

4   the next date, which is to file a proposed docket control

5   order, doesn't make sense since we haven't given you dates

6   for that.

7        So rather than staying the case, I'll just vacate

8   those other deadlines that were set in the February 26th

9   order, and we'll take that back up after we have resolved

10  the service issue and the severance issue or joinder issue.

11       Mr. Ramey, is there anything else that you want

12  the Court to address for the Plaintiff?

13       MR. RAMEY:  Nothing from the Plaintiff, Your

14  Honor.  Thank you very much.

15       THE COURT:  All right.  What about for the

16  Defendants?  Anything further, Mr. Jones?

17       MR. JONES:  Nothing from my clients, Your Honor.

18  Thank you, sir.

19       THE COURT:  All right.  Mr. Moffa?

20       MR. MOFFA:  No, Your Honor, and we thank the Court

21  for the attention to detail on this issue.

22       THE COURT:  All right.  Thank you.

23       In that case, we are adjourned.

24       COURT SECURITY OFFICER:  All rise.

25       (Hearing concluded.)

 1                        <u>CERTIFICATION</u>

 2

 3          I HEREBY CERTIFY that the foregoing is a true and

 4   correct transcript from the stenographic notes of the

 5   proceedings in the above-entitled matter to the best of my

 6   ability.

 7

 8

 9    /S/ Shelly Holmes                        5/15/19
     SHELLY HOLMES, CSR, TCRR                  Date
10   OFFICIAL REPORTER
     State of Texas No.: 7804
11   Expiration Date: 12/31/20

12

13

14

15

16

17

18

19

20

21

22

23

24

25