**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

|  |  |
|---|---|
| **TRAXCELL TECHNOLOGIES, LLC,**<br><br>　　　　　Plaintiff,<br><br>v.<br><br>**NOKIA SOLUTIONS AND NETWORKS US LLC; NOKIA SOLUTIONS AND NETWORKS OY; NOKIA CORPORATION; NOKIA TECHNOLOGIES OY; ALCATEL-LUCENT USA, INC.; HMD GLOBAL OY; AND T-MOBILE, USA, INC.,**<br><br>　　　　　Defendants. | **CASE NO. 2:18-CV-00412-RWS-RSP** |

**DEFENDANT HMD GLOBAL OY'S RESPONSE TO
<u>TRAXCELL'S BRIEFING ON SERVICE</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.   Introduction ................................................................................................................. 1

II.   Traxcell Has Not Met Its Burden To Show That HMD Can Be Served Through The
     Texas Secretary Of State ........................................................................................... 2

III.  Traxcell's Attempts At Service Through The Texas Secretary Of State Are
     Ineffective ................................................................................................................. 9

IV.  Traxcell's Attempts At Service Through The Texas Secretary Of State Are
     Untimely ................................................................................................................. 13

V.   Traxcell Has Unreasonably Multiplied Proceedings ....................................... 16

VI.  Conclusion ............................................................................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*AGIS Software Dev., LLC v. ZTE Corp.*,
No. 2:17-CV-00517-JRG, 2018 WL 4053897 (E.D. Tex. July 20, 2018)....................9, 10, 11

*Applied Food Sciences, Inc. v. New Star 21, Inc.*,
No. W-07-CA-359, 2009 WL 9120113 (W.D. Tex. Jan. 23, 2009) ..........................................7

*ATEN Int'l Co. v. Emine Tech. Co.*,
261 F.R.D. 112 (E.D. Tex. 2009)........................................................................................2, 6

*Bank of New York Mellon v. Redbud 115 Land Trust*,
452 S.W.3d 868 (Tex. App. Dallas 2014)..........................................................................3, 4

*BMC Software Belgium, N.V. v. Marchand*,
83 S.W.3d 789 (Tex. 2002)...................................................................................................3

*Campus Invs., Inc. v. Cullever*,
144 S.W.3d 464 (Tex. 2004)...........................................................................................11, 12

*Chowaniec v. Heyl Truck Lines*,
No. 90 C 07034, 1991 WL 111156 (N.D. Ill. June 17, 1991) ................................................13

*Franklin v. Miltex, Inc.*,
No. 3:10-CV-1923-N, 2011 WL 13233330 (N.D. Tex. Mar. 1, 2011)....................................3

*Freight Terminals, Inc. v. Ryder Sys., Inc.*,
461 F.2d 1046 (5th Cir. 1972) ...............................................................................................3

*GTE New Media Servs. Inc. v. BellSouth Corp.*,
199 F.3d 1343 (D.C. Cir. 2000)...............................................................................................7

*King v. Dogan*,
31 F.3d 344 (5th Cir. 1994) ...........................................................................................9, 11

*Lozano v. Bosdet*,
693 F.3d 485 (5th Cir. 2012) ..........................................................................................1, 14

*Macrosolve, Inc. v. Antenna Software, Inc.*,
No. 6:11-CV-287, 2012 WL 12903085 (E.D. Tex. Mar. 16, 2012) .......................................12

*McKanna v. Edgar*,
388 S.W.2d 927 (Tex. 1965)............................................................................................3, 5

*NexLearn, LLC v. Allen Interactions, Inc.*,
   859 F.3d 1371 (Fed. Cir. 2017)........................................................................6

*Nutrition Physiology Corp. v. Enviros Ltd.*,
   87 F. Supp. 2d 648 (N.D. Tex. 2000) ............................................................7

*Nylok Corp. v. Fastener World Inc.*,
   396 F.3d 805 (7th Cir. 2005) .......................................................................14

*Stephenson v. Caterpillar Inc.*,
   No. 2-16-CV-00071-JRG-RSP, 2018 WL 6595319 (E.D. Tex. Nov. 27, 2018)....................10

*Target Training Int'l, Ltd. v. Extended Disc Int'l, Ltd.*,
   No. 4:11-CV-02531, 2015 WL 12777224 (S.D. Tex. Mar. 4, 2015) ......................................8

*Texas W. Fin. Corp. v. Edwards*,
   797 F.2d 902 (10th Cir. 1986) ......................................................................3

*Thrasher v. City of Amarillo*,
   709 F.3d 509 (5th Cir. 2013) ...................................................................14, 15

*TQP Dev., LLC v. Aflac Inc.*,
   No. 2:11CV397, 2012 WL 13014643 (E.D. Tex. Aug. 22, 2012)...........................................7

*Trintec Industries, Inc., et al. v. Pedre Promotional Products, Inc.*,
   395 F.3d 1275 (Fed. Cir. 2005)......................................................................6

*Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*,
   No. CV-16-04502-BRO, 2016 WL 7479373 (C.D. Cal. Sept. 8, 2016)....................................2

*Webb v. Dallas Area Rapid Transit*,
   No. 3:17-CV-878-M-BN, 2017 WL 4082445 (N.D. Tex. Aug. 22, 2017)............................15

**STATUTES**

TEX. CIV. PRAC. & REM. CODE §§ 17.041–.045 .........................................................2

TEX. CIV. PRAC. & REM. CODE § 17.044 ............................................................2, 3, 4

**RULES**

Fed. R. Civ. P. 4.......................................................................................9, 14

Fed. R. Civ. P. 4(d) ...................................................................................14

Fed. R. Civ. P. 4(e) ...................................................................................14

Fed. R. Civ. P. 4(f).............................................................................2, 13, 14

Fed. R. Civ. P. 4(h) ............................................................................................................13, 14

Fed. R. Civ. P. 4(m) ......................................................................................................13, 14, 15

**OTHER AUTHORITIES**

4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND
    PROCEDURE § 1093 (4th ed. 2015)............................................................................................9

Hague Convention on Service Abroad of Judicial and Extrajudicial Documents
    ("Hague Convention"), Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 .................... passim

## I.      Introduction

Traxcell's May 28, 2019 brief regarding service and joinder (D.I. 60, "Brief")[1] fails to follow this Court's directive: "to provide evidence of proper service and supplemental briefing to support its theories of service."  (D.I. 54.)  Specifically, Traxcell fails to show why service on the Texas Secretary of State is an appropriate means to confer jurisdiction on HMD, a Finnish entity with no presence in the State of Texas.  Rather than make the required showing, Traxcell merely assumes that HMD is subject to Texas's long-arm statute, ignoring the Court's directive—as well as Traxcell's legal burden—to establish that HMD actually falls within the scope of that statute. For the reasons discussed below, Traxcell is wrong about service.

Traxcell now appears to agree with HMD that ***none*** of its overseas attempts at service on HMD were valid, as the Brief abandons all argument in this regard.  But Traxcell has come to this realization only after HMD expended considerable time and effort to ensure an accurate and complete record before the Court.  Traxcell now relies exclusively on two (faulty) attempts at service through the Texas Secretary of State, both brought ***more than six months*** after this case was filed—even though such attempts could have been made at the time of filing.  Traxcell offers no justification for waiting over 180 days to first attempt domestic service on the Texas Secretary of State, or for having shifted the burden to HMD to do Traxcell's homework.

The Federal Rules of Civil Procedure ("Fed. R. Civ. P." or "Rules") authorize dismissal when a court finds in its discretion that a plaintiff has not demonstrated reasonable diligence in attempting service on a foreign defendant.  *See Lozano v. Bosdet*, 693 F.3d 485, 489 (5th Cir.

---

[1] To preserve its jurisdictional defenses, as discussed at the May 2, 2019 scheduling conference, defendant HMD Global Oy ("HMD") only responds herein to § I of Traxcell's Brief (titled "HMD Is Served").  (May 2, 2019 Scheduling Conference Transcript ("Tr.") at 34:21–38:21.) Should this case proceed, with the Court's permission, HMD will raise the issue of joinder at the appropriate time.  (*Id*. at 37:5–11.)

2012).  HMD respectfully asks the Court to dismiss this case and to allow HMD to recover its

fees in addressing Traxcell's misrepresentations.

## II.    Traxcell Has Not Met Its Burden To Show That HMD Can Be Served Through The Texas Secretary Of State

Despite representing to this Court that service in Finland "is typically made pursuant to

the Hague Service Convention," (D.I. 39 at ¶ 4), Traxcell's allegations of service rely exclusively

on two submissions to the Texas Secretary of State: an April 8, 2019 mailing that HMD found,

upon receipt in Finland on April 24, 2019, held legally inoperative documents, and a May 6,

2019 submission that HMD has never received in Finland.  (*Compare* D.I. 58 (noting "[t]he

RETURN RECEIPT was received in this office dated April 24, 2019, Bearing the Signature Of

Addressee's Agent") with D.I. 59 (alleging no receipt by the addressee).)

Traxcell apparently now believes that HMD—and, for that matter, any foreign

company—can be served under the Texas long-arm statute,[2] specifically, TEX. CIV. PRAC. &

REM. CODE § 17.044 (a)(1) & (b), simply by private mail to the Texas Secretary of State.  (Brief

at 2 n.3.)  Setting aside the countries and companies for which this proposition might be correct,

Traxcell does not plead facts sufficient in its complaint to show that service on the Finnish

company HMD falls within either subsection (a)(1) or (b) of § 17.044.[3]

---

[2] The Texas long-arm statute, Texas Civil Practice and Remedies Code ("TEX. CIV. PRAC. & REM. CODE") §§ 17.041–.045, governs Texas courts' exercise of jurisdiction over nonresident defendants.  § 17.044 is titled "Substituted Service on Secretary of State."

[3] Traxcell relies on *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 121 (E.D. Tex. 2009) for the proposition that "service on the Texas Secretary of State was a proper method of service for a foreign corporate patent infringement defendant."  (Brief at 2 n.5.)  But that case involved service on a Taiwanese company.  *ATEN*, 261 F.R.D. at 118.  Taiwan is not a party to the Hague Convention or to any other treaty or agreement with the United States regarding service of process.  *See Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*, No. CV-16-04502-BRO (MRWx), 2016 WL 7479373, at *4 (C.D. Cal. Sept. 8, 2016).  That the *ATEN* court considered alternative mechanisms for service on a Taiwanese company does not inform if service is proper

"The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002) (citing *McKanna v. Edgar*, 388 S.W.2d 927, 930 (Tex. 1965)).  "Jurisdiction is not conferred unless the complaint alleges all of the jurisdictional facts set out in the [long-arm] statute." *Freight Terminals, Inc. v. Ryder Sys., Inc.*, 461 F.2d 1046, 1052 (5th Cir. 1972) (discussing the Texas long-arm statute).  Under Texas law, "substituted service is a valid extension of the state's long-arm jurisdiction only upon a showing of *strict* compliance with its provisions." *Texas W. Fin. Corp. v. Edwards*, 797 F.2d 902, 905 (10th Cir. 1986) (emphasis in original).

TEX. CIV. PRAC. & REM. CODE § 17.044(a)(1) & (b) states:

> (a)  The secretary of state is an agent for service of process or complaint on a nonresident who:
>
>> (1)  is required by statute to designate or maintain a resident agent or engages in business in this state, but has not designated or maintained a resident agent for service of process;
>>
>> …
>
> (b)  The secretary of state is an agent for service of process on a nonresident who engages in business in this state, but does not maintain a regular place of business in this state or a designated agent for service of process, in any proceeding that arises out of the business done in this state and to which the nonresident is a party.

"Courts . . . require[] plaintiffs to plead jurisdictional facts in strict conformity with the substitute service statute," *i.e.*, § 17.044.  *Franklin v. Miltex, Inc.*, No. 3:10-CV-1923-N, 2011 WL 13233330, at *3 (N.D. Tex. Mar. 1, 2011).  In *Bank of New York Mellon v. Redbud 115*

---

on a company like HMD, which (as HMD and Traxcell agree) can be served pursuant to Rule 4(f)(1).  2016 WL 7479373, at *4.  Traxcell provides no other federal authority in support of its argument that service on HMD through the Texas Secretary of State is proper.

*Land Trust*, the Court of Appeals of Texas found that plaintiff did not comply with the rules for service of process through Texas's long-arm statute when it did not allege, *inter alia*, that the defendant "is required by statute to designate or maintain a resident agent or engages in business in this state," as required by § 17.044(a)(1), or that the defendant "engages in business in this state, but does not maintain a regular place of business in this state . . . in any proceeding that arises out of the business done in this state and to which the nonresident is a party," as required by § 17.044(b).  452 S.W.3d 868, 872–73 (Tex. App. Dallas 2014).  As a result, the Court found that "even if these sections applied, [plaintiff] did not allege facts which, if true, showed that [defendant] was amenable to service through the secretary of state under any provision of the long-arm statute."  *Id*. at 873–74 (vacating default judgment for lack of service).

Neither the Original Complaint (D.I. 1) nor the First Amended Complaint (D.I. 22) plead facts which, if true, show that HMD is amenable to service through the Secretary of State under any provision of § 17.044.  Although both complaints contain boilerplate personal jurisdiction verbiage devoid of any particularized allegations, (D.I. 1 at ¶ 22; D.I. 22 at ¶ 22), neither complaint makes any allegations whatsoever that, for example, HMD "is required by statute to designate or maintain a resident agent or engages in business in this state, but has not designated or maintained a resident agent for service of process," as required by § 17.044(a)(1).

Furthermore, as Traxcell points out, while the Original Complaint alleged that HMD "has a regular and established place of business in this District," the First Amended Complaint instead alleges that HMD "is a foreign corporation with business activities in this District."  (Brief at 4 (quoting D.I. 1 at ¶ 23; D.I. 22 at ¶ 23).)  TEX. CIV. PRAC. & REM. CODE § 17.044(b) only applies to companies that do ***not*** "maintain a regular place of business" in Texas.  Traxcell's reliance on § 17.044(b) is therefore belied by its pleading in the Original Complaint.  Insofar as Traxcell

4

relies on the corresponding language in the First Amended Complaint to satisfy § 17.044(b), as discussed *infra*, Traxcell has still failed to properly deliver the First Amended Complaint to HMD.  Accordingly, neither the Original nor the First Amended Complaint demonstrates that Traxcell has complied with the service rules under the Texas long-arm statute—as, indeed, it has not.  *See McKanna*, 388 S.W.2d at 929–30.

HMD submits that this Court may look only to Traxcell's complaint for factual allegations supporting the availability of service under the Texas long-arm statute.  But even if Traxcell were allowed to plead the allegations contained in the Brief, Traxcell would still not be in compliance with the long-arm statute.  Traxcell's Brief asserts that HMD "engages in business in Texas in a proceeding (such as this one) that arises out of his [sic] business done in this state and to which he [sic] is a party."  (Brief at 1–2.)  But this assertion is a mere legal conclusion, bereft of any explanation or analysis of how HMD "engages in business" in Texas as defined by the long-arm statute.  Moreover, Traxcell fails to make any allegations whatsoever regarding whether HMD has a "resident agent for service of process" or whether HMD "maintain[s] a regular place of business" in Texas.  (*See id*. at 1–5.)

Even if Traxcell were to have included in a complaint its unsupported allegations about HMD made at the May 2 scheduling conference, there Traxcell's counsel merely alleged that the accused products are "offered to sell to everyone in Texas through the various wireless providers and also on the website generally available to anyone in Texas."  (Tr. at 4:22–5:9; *see also* 8:8–9:8 ("The Nokia phones are offered for sale through the various Nokia websites, and it says sold -- you know, sold by or manufactured by HMD Global at the bottom. So, Your Honor, we would contest that that is sufficient evidence that HMD Global is, in fact, selling the phones.").)  These

allegations are still insufficient as a matter of law to bring HMD within the ambit of the Texas long-arm statute.

The Federal Circuit has held that to assert specific jurisdiction over an allegedly infringing nonresident defendant based on sales of the allegedly infringing product through a website requires ***proof of actual sales***.  In *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371 (Fed. Cir. 2017), the Court held that the alleged patent infringer's "website alone does not render it subject to specific jurisdiction in Kansas" under Kansas's long-arm statute because "[w]hile a Kansas resident could purchase [the allegedly infringing product] from [defendant's] website, what is missing is any evidence that such a sale has taken place." *Id*. at 1378.  The Court went on to note that the patentee "does not even allege that any Kansas resident has accessed [the] website." *Id*.

And in *Trintec Industries, Inc., et al. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275 (Fed. Cir. 2005), the Court similarly declined to assert specific jurisdiction over an alleged patent infringer under D.C.'s long-arm statute based on an online store because it was unclear "whether any [D.C.] residents have ever actually used [defendant's] website to transact business."  395 F.3d at 1281.  The Court explained:

> Trintec relies heavily on Pedre's use of its own interactive website to advertise its products, which Trintec alleges customers in the District of Columbia can use to purchase those products from Pedre. The difficulty is that Pedre's website is not directed at customers in the District of Columbia, but instead is available to all customers throughout the country who have access to the Internet.

*Id*.  Traxcell's position closely mirrors those of the patentees in *NexLearn* and *Trintec*.  Traxcell has provided no evidence of actual sales of the allegedly infringing products to Texas residents,

and has not even alleged that such sales have occurred.[4]  Instead, Traxcell merely asserts that

HMD's products are "generally available" over the Internet.  This is insufficient to bring HMD

within the scope of the Texas long-arm statute.

　　　This district and its neighbors have applied the Federal Circuit's approach to Texas's

long-arm statute, declining to assert specific jurisdiction absent evidence of actual sales to Texas

residents or Texas-specific actions taken by the nonresident defendant.  *See TQP Dev., LLC v.

Aflac Inc.*, No. 2:11CV397, 2012 WL 13014643, at *4 (E.D. Tex. Aug. 22, 2012) (declining to

assert specific jurisdiction under Texas long-arm statute where "Plaintiff has not produced any

evidence indicating that Texas residents actually accessed Defendant's websites" because "the

ability of Texas residents to access Defendant's websites does not by itself show 'any persistent

course of conduct' by Defendant in Texas" (quoting *GTE New Media Servs. Inc. v. BellSouth

Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000))); *Applied Food Sciences, Inc. v. New Star 21, Inc.*,

No. W-07-CA-359, 2009 WL 9120113, at *4 (W.D. Tex. Jan. 23, 2009) (declining to assert

specific jurisdiction under Texas long-arm statute where "[n]o allegations or evidence suggest

that any of the [website's] interactivity was directed towards or accessed by anyone in Texas"

and "Plaintiffs have not pointed to any sales originating from the websites to persons or entities

located in Texas, nor have Plaintiffs alleged any Texas-specific direction of the websites");

*Nutrition Physiology Corp. v. Enviros Ltd.*, 87 F. Supp. 2d 648, 655 (N.D. Tex. 2000) (declining

to assert specific jurisdiction under Texas long-arm statute where "[t]here is no evidence to

---

[4] Traxcell's sole authority for the notion that service through the Texas Secretary of State is proper for HMD involved a situation where the plaintiff provided "several specific instances where the accused products, admittedly manufactured by [defendant], [were] consistently available at retail stores in Texas."  *See ATEN*, 261 F.R.D. at 119.  Traxcell has made no such evidentiary showing here, let alone demonstrated that such sales are made by or are attributable to HMD.

establish that [defendant] made any sales in Texas through its web site, that it exchanged any money or services from or through Texas, or that it has consummated any form of business transaction remotely relating to Texas other than possibly forwarding email messages to a subsidiary").

Furthermore, to the extent that Traxcell alleges HMD is subject to the Texas long-arm statute through unspecified sales by "various wireless providers" ***other*** than through a website, (Tr. at 4:22–5:9), Courts have held that evidence of actual sales are likewise required even under service allegations involving third parties. *See Target Training Int'l, Ltd. v. Extended Disc Int'l, Ltd.*, No. 4:11-CV-02531, 2015 WL 12777224, at *8 (S.D. Tex. Mar. 4, 2015), *report and recommendation adopted*, 2015 WL 12777386 (S.D. Tex. June 4, 2015), *aff'd*, 645 F. App'x 1018 (Fed. Cir. 2016) (declining to assert specific jurisdiction under Texas long-arm statute over Finnish defendant that sold the allegedly infringing products in North America through a distributor where patentee "offered no evidence to show that [defendant] purposefully targeted Texas residents" and "submitted no evidence that [defendant's] sales of the [allegedly infringing product] specifically target residents of Texas, or that the accused product has been sold, or even offered for sale, in Texas").

Whether considering Traxcell's pleadings, the allegations in its Brief, or its unsupported representations at the May 2 scheduling conference, Traxcell has failed to meet its burden to establish that HMD—a Finnish corporation with no presence in Texas and no demonstrated sales in Texas or to Texas residents—is subject to the Texas long-arm statute and may properly be served through the Texas Secretary of State.  Accordingly, the Court should dismiss this action for Traxcell's failure to serve HMD.

### III.   Traxcell's Attempts At Service Through The Texas Secretary Of State Are Ineffective

Even if Traxcell could meet its burden of showing that HMD is subject to service under the Texas long-arm statute, neither of its attempts to so serve HMD were properly effected.

Traxcell primarily relies on an April 24, 2019 service attempt but admits that therein Traxcell "inadvertently … provided the Secretary with the Original Complaint instead of the First Amended Complaint."  (Brief at 3.)  Traxcell further admits that the First Amended Complaint does not adopt the Original Complaint.  (*Id*. at 4.)  For this reason, Traxcell's April 24, 2019 service attempt is of no legal effect.

"An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading."  *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).  "'[S]ervice of a superseded complaint with the summons does not fulfill the requirements of [Rule 4]' as 'a superseded complaint is a mere scrap of paper.'"  *AGIS Software Dev., LLC v. ZTE Corp.*, No. 2:17-CV-00517-JRG, 2018 WL 4053897, at *3 n.3 (E.D. Tex. July 20, 2018) (quoting 4A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1093 (4th ed. 2015)).

Traxcell argues that the Court should deem transmittal of the legally inoperative Original Complaint proper service because the First Amended Complaint includes "identical causes of actions and factual allegations from the Original Complaint never changed."  (Brief at 4.)  But that is not the law.  *See King*, 31 F.3d at 346.  Traxcell unduly focuses on dicta in *AGIS* wherein the Court emphasized the differences between the original and amended complaints.  (Brief at 3 (citing *AGIS*, 2018 WL 4053897, at *2).)  But those differences were not the Court's reason for finding the original complaint superseded: on the contrary, the Court explicitly "reject[ed] the

notion that the Original Complaint which has not yet been served may effectuate service" once

an amended complaint has been properly filed.  *AGIS*, 2018 WL 4053897, at *3 n.3.  In fact, the

*AGIS* Court squarely stated that it is the ***filing of the amended complaint*** that renders the

original complaint of no legal effect.[5]  *Id.*

        In any event, Traxcell's representation that the First Amended Complaint "changed no

factual assertions against HMD," (Brief at 3), is wholly inconsistent with other statements

Traxcell has made to this Court—including statements elsewhere in the Brief.  Traxcell

acknowledges that the First Amended Complaint added T-Mobile as a party but claims that "the

new patent infringement allegations against T-Mobile do not implicate HMD."  (Brief at 4.)

However, in its discussion of joinder in the next section ***of the same brief***, Traxcell relies on a

theory of infringement that allegedly implicates HMD and T-Mobile ***together***:

> HMD sells wireless handsets through various websites, including
> in Texas, under the brand Nokia. **These handsets are sold to
> work on wireless networks such as those operated by T-Mobile.**
> The T-Mobile wireless network uses Nokia parts. **This
> combination of handset, network, and equipment make up the
> components of, for example, a "wireless communications
> system" as claimed in claim 1 of the '388 patent.**

(*Id.* at 6 (emphasis added).)  And at the May 2 scheduling conference, in response to the Court's

inquiry regarding the relationship between the infringement allegations against HMD and T-

---

[5] Traxcell also cites *Stephenson v. Caterpillar Inc.*, No. 2-16-CV-00071-JRG-RSP, 2018 WL
6595319, at *2 (E.D. Tex. Nov. 27, 2018), *report and recommendation adopted*, 2018 WL
6589981 (E.D. Tex. Dec. 14, 2018), but that case is inapposite.  There, the Court considered
defendant's summary judgment motion against a cause of action from the original complaint that
was unchanged in the amended complaint rather than have defendant unnecessarily file a new—
virtually identical—summary judgment motion.  2018 WL 6595319, at *2.

Mobile, Traxcell's counsel certainly did not argue that the allegations against T-Mobile "do not

implicate HMD":

> THE COURT: What is the relationship between the allegations
> between HMD and the allegations against T-Mobile?
>
> MR. RAMEY: Yes, Your Honor. So we have -- the situation is we
> have various claims related to patents that cover either, one, the
> wireless network, or, two, the cell phone operating within the
> wireless network.
>
> And so the cell phone that's manufactured is a key
> component of the system. The wireless network is -- the
> components are sold by Nokia. The wireless network is operated
> by T-Mobile.
>
> There's -- there's no question in our mind, and I don't think
> HMD or Nokia or T-Mobile is going to disagree with this, that **the
> wireless phones manufactured by HMD Global are not sold to
> be paperweights. They're sold to work on a wireless network.
> They're sold to work on, for instance, T-Mobile's wireless
> network.** T-Mobile's wireless network uses Nokia parts, as we've
> shown in our infringement contentions which have been served on
> all the parties.
>
> **So this is -- this is the same transaction or occurrence,
> Your Honor. This is -- I mean, these phones are sold for the
> very particular purpose of working on the wireless networks
> that we've accused of infringing.**

(Tr. at 9:16–10:14 (emphasis added).)  Traxcell should not be permitted to rely on one theory of

infringement to support its joinder argument but repudiate that very theory to support its service

attempts.

Traxcell's April 24 service attempt was ineffective because Traxcell's transmittal of a

legally inoperative, superseded complaint was of no legal effect.  *King*, 31 F.3d at 346; *AGIS*,

2018 WL 4053897, at *3 n.3.

In a single paragraph, Traxcell relies in the alternative on a purported May 2019 service

attempt.  (Brief at 5.)  But Traxcell does not provide the Court with the content of that

submission, and HMD has never received it in Finland.  Indeed, Traxcell's "affidavit of service,"

(D.I. 59), conspicuously omits any reference to receipt by HMD.  Traxcell relies on *Campus*

*Invs., Inc. v. Cullever*, 144 S.W.3d 464, 466 (Tex. 2004), to argue that Traxcell's certificate from

the Secretary of State "conclusively establishes that process was served."  (Brief at 5.)  But that

case only held that the Secretary of State's certificate provides prima facie evidence that a proper

***Texas state court*** citation had been served on a domestic defendant, and expressly reserved the

right of a defendant to challenge service of a defective citation through a procedural mechanism

unique to state court practice.  *Id.*  Traxcell provides no authority that the Texas Secretary of

State's certificate alone can establish proper service of a ***federal*** complaint on a foreign

defendant who never received it.

Moreover, Judge Davis has held that "[b]ecause substituted service on the Texas

Secretary of State for a nonresident defendant requires the transmittal of judicial documents

abroad, the Hague Convention is implicated."  *Macrosolve, Inc. v. Antenna Software, Inc.*, No.

6:11-CV-287, 2012 WL 12903085, at *2 (E.D. Tex. Mar. 16, 2012) (finding plaintiff's attempted

service of process "deficient for failure to comply with the requirements of the Hague

Convention").  In so holding, Judge Davis rejected the same erroneous argument Traxcell makes

here: namely, that the international mailing of the summons and complaint by the Secretary of

State is "immaterial, because service was complete in Texas when the Secretary of State was

served."  *See* Sur-Reply In Opp. to Mot. to Dismiss, *Macrosolve,* Civil Case No. 6:11-CV-287

(E.D. Tex.), D.I. 129, at 3 (citing *Campus Invs.*, 144 S.W.3d at 466).  Whatever *Campus Invs.*

might say about ***when*** a party is deemed served via the Secretary of State, it does not (and

cannot) override the United States' treaty obligations under the Hague Convention, and a party in

12

a signatory country cannot be deemed served by mail *unless* the Hague Convention is observed.

The Hague Convention was not observed here.

While Finland has not objected generally to mail service under Article 10 of the Hague

Convention, any mail transmittal of documents to HMD in Finland (whether by Traxcell or the

Secretary of State) must still comport with all other requirements of the Hague Convention.

Traxcell makes no effort to show that its service did.  As one example, Article 15 of the Hague

Convention requires, *inter alia*, that documents be either (a) "served by a method prescribed by

the internal law of the State addressed for the service of documents in domestic actions upon

persons who are within its territory" or (b) "actually delivered" before a foreign defendant can be

found in default thereon.  *See* 20 U.S.T. 361.  Here, Traxcell has not shown compliance with a

Finnish domestic service method, nor has Traxcell shown actual delivery in Finland—indeed, the

documents have not been delivered to HMD in Finland.  Traxcell's May 2019 service attempt

therefore fails to satisfy the requirements of the Hague Convention.  *See, e.g., Chowaniec v. Heyl*

*Truck Lines*, No. 90 C 07034, 1991 WL 111156, at *2 (N.D. Ill. June 17, 1991) (finding that

Article 15 of Hague Convention applies to service via Illinois Secretary of State on foreign

defendant in signatory country).

As with its prior attempts at service, Traxcell has failed to establish that HMD was

properly served in May under the Texas long-arm statute.

## IV.    Traxcell's Attempts At Service Through The Texas Secretary Of State Are Untimely

Further, even if *arguendo* HMD were subject to service through the Secretary of State

when properly effected, Traxcell's attempts here were untimely, and Traxcell has no good cause

for further extensions.

Rule 4(m) dictates a time frame within which a plaintiff must serve a defendant:

> Time Limit for Service. If a defendant is not served within 90 days
> after the complaint is filed, the court—on motion or on its own
> after notice to the plaintiff—must dismiss the action without
> prejudice against that defendant or order that service be made
> within a specified time. But if the plaintiff shows good cause for
> the failure, the court must extend the time for service for an
> appropriate period. This subdivision (m) does not apply to service
> in a foreign country under Rule 4(f), 4(h)(2), or 4(j)(1), or to
> service of a notice under Rule 71.1(d)(3)(A).

If the plaintiff delays service more than 90 days after the complaint is filed, the Court "***must***

dismiss the action without prejudice against that defendant or order that service be made within a

specified time," with certain exceptions. Fed. R. Civ. P. 4(m) (emphasis added).  Proof of "good

cause" for failure to serve requires "at least as much as would be required to show excusable

neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually

does not suffice."  *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) (internal

quotation marks and citation omitted).  Additionally, some "showing of good faith on the part of

the party seeking an enlargement and some reasonable basis for noncompliance within the time

specified is normally required."  *Id.* (internal quotation marks and citation omitted).

Traxcell now relies exclusively on service under Rule 4(h)(1) and its incorporation of

Rule 4(e)(1), (Brief at 1), but neither rule is among Rule 4(m)'s listed exceptions, all of which

exclusively encompass "service ***in*** a foreign country." (emphasis added). This makes sense, as

there is no need to accommodate the inherent delays of serving a foreign defendant in a foreign

country if that defendant can also be served "in a judicial district of the United States."  Fed. R.

Civ. P. 4(h)(1).  Rather, the Fifth Circuit has squarely stated that, for a defendant who could be

served ***both*** within ***or*** outside a judicial district of the United States (as Traxcell alleges of

HMD), all domestic service attempts under Rule 4(e) must be made within the time limit of Rule

4(m), notwithstanding the possibility of later service attempts abroad:

> Rule 4 contemplates other avenues for reaching foreign
> defendants. *See* Fed. R. Civ. P. 4(d), (e). Those options are subject
> to the 120-day [now 90-day] time limit imposed by Rule 4(f).
> Another manner of reaching the same defendants is exempted,
> namely service abroad through an internationally agreed means.

*Lozano*, 693 F.3d at 489.  Nor is the extended window for foreign service on such a defendant

unlimited.  "Because 'district courts need to be able to control their dockets,' Rule 4(f)

authorizes a without-prejudice dismissal when the court determines in its discretion that the

plaintiff has not demonstrated reasonable diligence in attempting service" on a foreign

defendant.  *Id.* (quoting *Nylok Corp. v. Fastener World Inc.*, 396 F.3d 805, 807 (7th Cir. 2005)).

Filing an amended complaint does not toll the Rule 4(m) service period, meaning that

Traxcell's time limit for service is calculated from the filing of the Original Complaint.  *See*

*Webb v. Dallas Area Rapid Transit*, No. 3:17-CV-878-M-BN, 2017 WL 4082445, at *1 (N.D.

Tex. Aug. 22, 2017), *report and recommendation adopted*, 2017 WL 4023100 (N.D. Tex. Sept.

13, 2017) (holding that the filing of an amended complaint "did not extend the deadline by which

[plaintiff] was to have perfected service as to at least the defendants named initially").  Here,

Traxcell's first attempt at domestic service did not arrive at the Texas Secretary of State (let

alone at HMD's office in Finland) until April 8, 2019, 192 days after the Original Complaint was

filed.  Traxcell's second attempt did not arrive at the Texas Secretary of State until May 6, 2019,

220 days after the Original Complaint was filed, and has never arrived at HMD's office in

Finland.

Traxcell has offered the Court no justification why, in trying to serve HMD in this

manner, Traxcell waited ***twice as long*** as the deadline after which the Court "must" dismiss an

action under Rule 4(m).  At best, Traxcell's behavior in this case evidences "simple

inadvertence," "mistake of counsel," and "ignorance of the rules"—the very excuses which the Fifth Circuit instructs do ***not*** constitute good cause to extend the domestic service deadline. *Thrasher*, 709 F.3d at 511.  Nor has Traxcell offered ***any*** "basis for noncompliance within the time specified," let alone a "reasonable basis," *id.*, since its chosen method of alleged service (private mail on the Texas Secretary of State) could have been effected on the day of filing.

Accordingly, Rule 4(m) provides further reason why this Court must dismiss Traxcell's complaint against HMD.

## V.    Traxcell Has Unreasonably Multiplied Proceedings

Traxcell's Brief relies exclusively on service through the Texas Secretary of State and abandons any arguments that the previous service attempts were effective.[6]  Nonetheless, HMD has committed significant time, money, and energy to address Traxcell's habitual misrepresentations to the Court regarding those previous service attempts:

- On February 6, 2019, Traxcell filed D.I. 19 bearing the following docket text: "AFFIDAVIT of Service for Summons and Complaint *HMD Global* on 01/23/2019." D.I. 19 was not an affidavit of service; rather, it was a United States Postal Service shipping label, receipt, and partial printout of a webpage, documents which Traxcell now concedes do not evince proper service on HMD.

- On February 22, 2019, Traxcell filed D.I. 24 bearing the following docket text: "AFFIDAVIT of Service for Summons and Complaint *HMD Global OY* served on Martina Pokorna on 02/19/2019."  D.I. 24 was not an affidavit of service; rather, it

---

[6] Although Traxcell represented to the Court that it would affirmatively acknowledge in its Brief the abandonment of service theories on which it would not rely "so that HMD doesn't have to address that issue," (Tr. at 41:6–10), it has not done so here.  Nevertheless, HMD takes Traxcell's counsel at its word and has declined to substantively address methods of service other than those in Traxcell's Brief, understanding Traxcell to no longer rely thereon.

was a printout of an email chain, a document which Traxcell now concedes does not evince proper service on HMD.

- On March 29, 2019, Traxcell filed an "AFFIDAVIT of Service *Attempts by Private Process Server*," (D.I. 39), comprising a three-page declaration by Nelson Tucker of Process Service Network LLC, a self-titled "qualified expert witness on international service of process."  (*Id*. at ¶ 2.)  Mr. Tucker stated that "[o]n March 28, 2019, I sent the service documents to HMD Global OY via Federal Express."  (*Id*. at ¶ 8.)  The Federal Express tracking data indicated that a package with that tracking number was first picked up at 4:04 PM on Monday, April 1, 2019, and was not delivered until April 8, 2019.  (D.I. 44-1 at ¶ 6, Exhibit 5; *see also* Tr. at 15:13–16:4.)

- On April 22, 2019, Traxcell asserted that it had realized on March 29, 2019 that Process Service Network, LLC's service (discussed in Mr. Tucker's sworn declaration, D.I. 39) "was not performed properly under the rules."  (D.I. 48 at ¶ 4.)  Traxcell inexplicably waited **over three weeks** to alert the Court and the parties to the misrepresentation in Mr. Tucker's sworn declaration.  (Tr. at 15:13–16:15.)

- On April 24, 2019, Traxcell asserted that it "served HMD through the Texas Secretary of State with its First Amended Complaint and the proper summons" on or about April 8, 2019.  (D.I. 49 at 2.)  Traxcell's counsel, William P. Ramey III, attested to the same under penalty of perjury.  (*See* D.I. 49-2 at ¶ 8.)  Traxcell now admits that it actually sent HMD a copy of the superseded *Original* Complaint. (Brief at 3; Tr. at 11:14–22; *see also* Tr. at 16:16–17:3.)

- At the May 2 scheduling conference, Traxcell represented to the Court that it had evidence of sales of HMD products in Texas within the meaning of the Texas long-

arm statute's substituted service provision.  (Tr. at 5:3–9; 9:2–8.)  The Court directed

Traxcell to file such evidence with the Court.  (*Id*. at 33:19–22; D.I. 54.)  But Traxcell

has provided no such evidence by the Court's deadline.  (*See* Brief at 1–5.)

  The burden of presenting an accurate factual record to the Court should not fall on

HMD's shoulders.  HMD reserves the right upon any dismissal of this action to seek recovery for

its fees and costs (and other relief as appropriate) in connection with Traxcell's misconduct

throughout this action.

## VI. Conclusion

  For the foregoing reasons, HMD respectfully asks the Court to dismiss HMD from this

case.

Dated: June 11, 2019     */s/ William J. McCabe*
            WILLIAM J. MCCABE
            WMcCabe@PerkinsCoie.com
            MATTHEW J. MOFFA
            MMoffa@PerkinsCoie.com
            THOMAS V. MATTHEW
            TMatthew@PerkinsCoie.com
            PERKINS COIE LLP
            1155 Avenue of the Americas, 22nd Floor
            New York, New York 10036-2711
            Phone: (212) 262-6900
            Fax: (212) 977-1649

            *Attorneys for Defendant HMD Global Oy*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service are

being served with a copy of this document via the Court's CM/ECF system per Local Rule

CV-5(a)(3) on June 11, 2019.

*/s/ William J. McCabe*
William J. McCabe
