**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| **TRAXCELL TECHNOLOGIES, LLC,**<br><br>    Plaintiff,<br><br>v.<br><br>**NOKIA SOLUTIONS AND NETWORKS US LLC; NOKIA SOLUTIONS AND NETWORKS OY; NOKIA CORPORATION; NOKIA TECHNOLOGIES OY; ALCATEL-LUCENT USA, INC.; HMD GLOBAL OY; AND T-MOBILE, USA, INC.,**<br><br>    Defendants. | **CASE NO. 2:18-CV-00412-RWS-RSP**<br><br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT HMD GLOBAL OY'S MOTION TO DISMISS PLAINTIFF'S
INFRINGEMENT CLAIMS UNDER U.S. PATENT NOS. 9,888,353 AND 9,918,196**

**TABLE OF CONTENTS**

I.   Introduction ................................................................................................................. 1

II.  Legal Standards .......................................................................................................... 2

     A.   Motion to Dismiss Under Rule 12(b)(6) ........................................................ 2

     B.   Direct Infringement ........................................................................................ 3

          1.   Divided Infringement of System Claims ........................................... 4

          2.   Divided Infringement of Method Claims ........................................... 4

     C.   Indirect Infringement ..................................................................................... 5

III. Traxcell Has Not and Cannot Plead Plausible Facts Showing That HMD Or Its
     Handset Operators Are Direct Infringers ................................................................... 5

     A.   Traxcell's Patent Claims ................................................................................ 5

          1.   HMD Cannot Infringe Traxcell's System Claims .............................. 6

          2.   HMD Cannot Infringe Traxcell's Method Claims ........................... 11

IV.  Traxcell Has Not and Cannot Plead Plausible Facts Showing That HMD Is an
     Indirect Infringer ...................................................................................................... 13

V.   Conclusion ............................................................................................................... 14

# **TABLE OF AUTHORITIES**

**CASES**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
 797 F.3d 1020 (Fed. Cir. 2015) .................................................................................................3, 4

*Aro Mfg. Co. v. Convertible Top Replacement Co.*,
 365 U.S. 336 (1961) ............................................................................................................................5

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ......................................................................................................................3, 5

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 554 (2007) ............................................................................................................................3

*BMC Res., Inc. v. Paymentech, L.P.*,
 498 F.3d 1373 (Fed. Cir. 2007) .........................................................................................................3

*Bowlby v. City of Aberdeen*,
 681 F.3d 215 (5th Cir. 2012) ........................................................................................................2, 3

*Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*,
 631 F.3d 1279 (Fed. Cir. 2011) ..........................................................................................3, 4, 7, 8

*DSU Med. Corp. v. JMS Co.*,
 471 F.3d 1293 (Fed. Cir. 2006) .........................................................................................................6

*Hinojosa v. Livingston*,
 807 F.3d 657 (5th Cir. 2015) ............................................................................................................2

*Intellectual Ventures I LLC v. Motorola Mobility LLC*,
 870 F.3d 1320 (Fed. Cir. 2017) ................................................................................................ passim

*Joy Techs., Inc. v. Flakt, Inc.*,
 6 F.3d 770 (Fed. Cir. 1993) ............................................................................................................11

*Limelight Networks, Inc. v. Akamai Techs., Inc.*,
 572 U.S. 915 (2014) ...........................................................................................................5, 11, 14

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
 594 F.3d 383 (5th Cir. 2010) ............................................................................................................2

*Lozano v. Bosdet*,
 693 F.3d 485 (5th Cir. 2012) ............................................................................................................1

*McZeal v. Sprint Nextel Corp.*,
    501 F.3d 1354 (Fed. Cir. 2007) ................................................................................2

*Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*,
    620 F.3d 465, 468 (5th Cir. 2010) ...........................................................................3

*Travel Sentry, Inc. v. Tropp*,
    877 F.3d 1370 (Fed. Cir. 2017) ................................................................................4

**STATUTES**

28 U.S.C. § 1927 ...................................................................................................................1

35 U.S.C. § 271 ............................................................................................................ *passim*

**RULES**

Fed. R. Civ. P. 8(a)(2) ...........................................................................................................2

Fed. R. Civ. P. 12(b)(6) .........................................................................................................2

I.  **Introduction**

Defendant HMD Global Oy ("HMD") respectfully moves pursuant to Federal Rule of Civil Procedure ("Rule" or "Fed. R. Civ. P.") 12(b)(6) for dismissal of Traxcell Technologies, LLC's ("Traxcell's") allegations of infringement of U.S. Patent Nos. 9,888,353 ("'353 patent") and 9,918,196 ("'196 patent") because Traxcell's First Amended Complaint ("FAC") (D.I. 22) does not plead plausible facts that show HMD to be liable as a direct or indirect infringer of any claim of those patents.  Traxcell's claims should be dismissed with prejudice because, as explained below, Traxcell cannot plead such facts and amendment of its pleading would be futile.[1]

HMD makes mobile handsets—not cell towers or computer servers.  Traxcell's FAC does not include plausible allegations of fact that HMD makes, uses, offers to sell, sells or imports the claimed "mobile wireless communications *network*."  Traxcell's FAC makes clear that each claim of the '353 and '196 patents requires network equipment—something that HMD does not make or supply.  For the '353 patent, Traxcell points to "Huawei's base stations" (cell towers) as being the claimed "multiple radio frequency transceivers."  (FAC, ¶32.)  (To be clear, HMD is not Huawei).  Similarly, for the '196 patent, Traxcell points to network equipment—not a mobile handset—as being the claimed "directional assistance service" ("computer/server

---

[1] HMD submits this motion to preserve its rights should this Court deem HMD to have been served with process on August 6, 2019.  (*See* D.I. 64.)  Nevertheless, HMD maintains that its Motion to Dismiss for Lack of Service (D.I. 44) should be granted.  Traxcell did not serve HMD within a reasonable time or even within the Court's extended deadline.  *See Lozano v. Bosdet*, 693 F.3d 485, 489 (5th Cir. 2012).  Traxcell also misrepresented the content and legal effect of its prior service attempts, obligating HMD to engage in significant briefing to set a correct factual record before the Court.  (*See* D.I. 44 at 12-16; D.I. 51 at 3; D.I. 63 at 16-18.)  If the Court deems HMD served, HMD maintains that it is entitled to its fees (including under 28 U.S.C. § 1927) in connection with Traxcell's delay and repeated misrepresentations regarding service.  (D.I. 44 at 19; D.I. 63 at 16-18.)

operating in a communications network"). (FAC, ¶38.) Because HMD does not make or supply "base stations"[2] or "computer/servers," it cannot be liable as a direct infringer.[3] And because as set forth herein HMD handset operators are not direct infringers, HMD cannot be liable for indirect infringement.[4]

## II.     Legal Standards

### A.     Motion to Dismiss Under Rule 12(b)(6)

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. Fed. R. Civ. P. 12(b)(6). Regional circuit law applies to such motions. *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1355–56 (Fed. Cir. 2007).

When considering a Rule 12(b)(6) motion, a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v.*

---

[2] Traxcell's reference to "HMD Global Small or Femto cells" (FAC, ¶32) is implausible as HMD does not make or supply such equipment.

[3] To be sure, Traxcell's FAC does not even allege that **HMD** makes, uses, offers for sale, sells or imports such equipment. Rather, Traxcell alleges that "**Defendants**" collectively make, use, etc. such equipment. Traxcell's deliberate use of vague term "Defendants" does not make such an allegation against HMD plausible. *See Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) ("When the plaintiff's complaint uses blanket terms covering all the defendants, by lumping them together or calling them collectively 'TDCJ,' these allegations are properly disregarded…").

[4] Traxcell's FAC does not make any allegations of fact that operators of HMD's mobile handsets make, use, offer to sell, sell or import the claimed "mobile wireless communications network" in an infringing manner.

2

*Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The court must then decide whether those facts state a claim for relief that is plausible on its face. *Bowlby*, 681 F.3d at 219. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The plausibility requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" that the defendant is liable for the alleged misconduct. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007).

A district court may dismiss a complaint with prejudice for failure to state a claim where amendment would be futile. *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010) (citing *Briggs v. Mississippi*, 331 F.3d 499, 508 (5th Cir. 2003)).

### B.   Direct Infringement

To state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant "without authority makes, uses, offers to sell, or sells any patented invention . . . during the term of the patent." 35 U.S.C. § 271(a). There are two ways to allege direct infringement: (1) undivided direct infringement; and (2) divided infringement.

For a system claim, direct infringement "requires a party . . . to use each and every . . . element of a claimed [system] . . . by putting every element collectively into service." *Centillion Data Sys., LLC v. Qwest Commc'ns Int'l, Inc.*, 631 F.3d 1279, 1284 (Fed. Cir. 2011) (internal quotations omitted). For a method claim, "[d]irect infringement under § 271(a) occurs where all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc) ("*Akamai*") (citing *BMC Res., Inc. v. Paymentech, L.P.*, 498 F.3d 1373, 1379–81 (Fed. Cir. 2007)).

Undivided direct infringement arises from activity of a single party alone, while divided infringement applies in situations where multiple actors use or practice the claimed system or

3

method. Because the infringement analyses differ between divided infringement of system claims and divided infringement of method claims, they will each be addressed in turn below.

### 1. Divided Infringement of System Claims

Direct infringement under § 271(a) by "use" of a system claim that includes elements in the possession of more than one actor requires a single actor to "put[] every element [of the claimed system] collectively into service," *i.e.*, "control the system as a whole and obtain benefit from it." *Centillion*, 631 F.3d at 1284. While the party need not "exercise physical or direct control over each individual element of the system," *id.*, the Federal Circuit clarified in *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320 (Fed. Cir. 2017) that "use" of a system claim requires that a user "control" and "benefit from *each* claimed component." *Id.* at 1329 (emphasis added).

### 2. Divided Infringement of Method Claims

"Where more than one actor is involved in practicing the steps" of a claimed method, the key inquiry is whether "the acts of one are *attributable* to the other such that a single entity is responsible for the infringement." *Akamai*, 797 F.3d at 1022 (emphasis added). An entity will be held responsible for the performance of method steps by others "where that entity directs or controls others' performance" or "where the actors form a joint enterprise." *Id.* "[L]iability under § 271(a) can also be found when an alleged infringer conditions participation in an activity or receipt of a benefit upon performance of a step or steps of a patented method and establishes the manner or timing of that performance." *Id.* at 1023.

As the Federal Circuit explained in *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017), "a common thread connects" the case law on divided infringement, no matter the relationship between the parties: courts look for "evidence that a third party hoping to obtain

4

access to certain benefits can only do so if it performs certain steps identified by the defendant, and does so under the terms prescribed by the defendant." *Id.* at 1380.

### C. Indirect Infringement

There are two types of indirect infringement: induced infringement and contributory infringement. Relevant to this motion, in either case "a finding of direct infringement is a predicate to any finding of indirect infringement." *Intellectual Ventures I*, 870 F.3d at 1322. The Supreme Court has made clear, "our case law leaves no doubt that inducement liability may arise 'if, but only if, [there is] . . . direct infringement.'" *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 921 (2014) (quoting *Aro Mfg. Co. v. Convertible Top Replacement Co.*, 365 U.S. 336, 341 (1961)).

### III. Traxcell Has Not and Cannot Plead Plausible Facts Showing That HMD Or Its Handset Operators Are Direct Infringers

Every claim of the '353 and '196 patents requires a ***network*** or the use of ***network equipment***. HMD handsets alone (*e.g.*, not connected to a network) cannot infringe. Even when connected, HMD cannot be liable as a direct or indirect infringer. Traxcell's claims should be dismissed because Traxcell has not (and cannot) plead plausible facts that HMD is liable as a direct or indirect infringer. *See Iqbal*, 556 U.S. at 678.

### A. Traxcell's Patent Claims

The '353 and '196 patents contain both system and method claims. Because the infringement analysis differs for each type of claim, we address each in turn.

### 1. HMD Cannot Infringe Traxcell's System Claims

Traxcell makes no plausible allegation of fact that HMD makes, sells, offers to sell or imports the claimed networks. Nor could it. HMD only makes mobile handsets.[5] Moreover, Traxcell pleads no plausible facts that HMD uses the claimed networks as required to constitute infringement under 35 U.S.C. § 271(a). To demonstrate direct infringement of its network (system) claims, Traxcell must allege plausible facts showing that **HMD** "uses" the claimed network. To show indirect infringement by HMD, Traxcell must allege plausible facts that demonstrate that **HMD handset operators** "use" the claimed network.[6] In either case, "use" that would constitute infringement under 35 U.S.C. § 271(a) requires that a user "control" and "benefit from each claimed component." *Intellectual Ventures I*, 870 F.3d at 1329.

Traxcell's FAC makes no plausible factual allegation that HMD or its handset operators use the claimed "network" in a manner that infringes the '353 or '196 patents. At most, Traxcell alleges that the "***Defendants*** put the inventions claimed by the '353 Patent into service (i.e., used them)." (FAC, ¶¶33 & *see* ¶39 for the '196 patent) (emphasis added).[7] But that is merely a legal conclusion without any facts to show that HMD uses the network. To allege direct infringement by "use" of the claimed network, Traxcell must allege plausible facts that show that HMD (or its

---

[5] To be clear, HMD handsets are made outside of the United States.

[6] Traxcell must also plausibly allege that HMD knowingly and intentionally induced such infringement. *See DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006). Although Traxcell's pleadings are equally deficient in this regard, we do not address inducement in detail because Traxcell fails to plead plausible facts that show direct infringement by HMD handset operators, and that deficiency is fatal to its claims. *Intellectual Ventures I*, 870 F.3d at 1322 ("[A] finding of direct infringement is a predicate to any finding of indirect infringement.").

[7] Traxcell makes no analogous allegation with respect to making, offering to sell, selling or importing by HMD or any other defendant.

handset operators) not only use the elements of the network but that they *benefit* from each claimed component. Traxcell has not (and cannot) meet this burden.

Traxcell's FAC alleges that "Defendants obtain monetary and commercial benefit" from alleged use of the Traxcell patents. (FAC, ¶¶33 & 39.) Such an allegation is insufficient to show a benefit that would constitute an infringing "use" of the claimed network. In *Intellectual Ventures*, the Federal Circuit specifically rejected an argument that a benefit from the system as a whole constituted an infringing "use" and made clear that infringement requires that the user "control" and "benefit from each claimed component." The Federal Circuit in applying the Supreme Court's *Centillion* decision stated (emphasis added):

> The district court held (and IV argues on appeal) that *Centillion* requires only that the infringer benefit from the "system as a whole," such that a benefit derived from any claimed component of the claimed system would suffice to demonstrate an infringing "use." The district court concluded: "*Centillion* did not hold that the infringer [must] 'benefit' from every single limitation. Rather *Centillion* held that the user must 'obtain benefit' from the 'system as a whole' and its analysis of … benefit was not on a limitation-by-limitation basis." *Intellectual Ventures*, 176 F. Supp. 3d at 422.
>
> ***We disagree***. *Centillion* and *NTP* held that to "use" something is to put it into service, which means to control and benefit from it. And *Centillion* explicitly added that, to use a claimed system, what must be "used" is each element. *Centillion*, 631 F.3d at 1284 ("We agree that direct infringement by 'use' of a system claim 'requires a party ... to use each and every ... element of a claim [system].' In order to 'put the system into service,' the end user must be using all portions of the claimed invention." (alterations in original)). From those two propositions, it follows that, ***to use a system, a person must control (even if indirectly) and benefit from each claimed component***.

*Intellectual Ventures I*, 870 F.3d at 1329. The Federal Circuit further stated (emphasis added):

> We therefore reject IV's reading of *Centillion*. In an analysis of a system claim under *Centillion*, ***proof of an infringing "use" of the claimed system under § 271(a) requires the patentee to demonstrate that the direct infringer obtained "benefit" from each and every element of the claimed system.*** *See Centillion*,

7

> 631 F.3d at 1284. In addition, the direct or indirect control
> required "is the ability to place the system as a whole into service."
> *Id*.

*Id*.

Traxcell has pleaded no plausible facts that show that HMD or its handset operators either "control" or "benefit from each claimed component" of the '353 or '196 patent claims. Nor could it.

Turning first to the '353 patent, Claim 1 (identified in the FAC) requires that the "user location database"—a network element—"determines a location," "stores the result," "computes the location," and "compares the result."[8] The claim does not require that the "location" or the "result" be communicated to the end-user. Accordingly, HMD (and its handset operators) would not benefit from these components. Incredibly, the claim does not even require a mobile handset, only that the network is "configured for … communication with one or more mobile wireless communication devices." The claim states:

> 1. A mobile wireless communications network, comprising:
>
> multiple radio-frequency transceivers and associated multiple antennas to which the associated radio-frequency transceivers are coupled,
>
> ***wherein the multiple radio-frequency transceivers are configured for radio-frequency communication with one or more mobile wireless communications devices***; and
>
> a user location database controller coupled to the multiple radio-frequency transceivers,
>
>> wherein the user location database controller ***determines a location of a first one of the mobile wireless communications devices*** by comparing a result of a digital signature location with received signal strength indication measurements to determine whether or not the result of the digital signature location is reasonable,
>>
>> wherein the user location database controller, responsive to determining that the result of the digital signature location is reasonable, ***stores the result as the***

---

[8] Claim 11 of the '353 patent (the other independent system claim) contains a similar "determining" and "storing" element: "wherein the user location database controller, responsive to determining that the result of the digital signature location is reasonable, stores the result as the location of the first mobile wireless communications device in a user location database."

8

>> ***location of the first mobile wireless communications device in a user location database***,
>
>> wherein the user location database controller, responsive to determining that the result of the digital signature location is not reasonable, ***computes the location of the first mobile wireless communications device*** in conformity with the received signal strength indication measurements,
>
>> wherein the user location database controller ***compares the result of the digital signature location*** with the received signal strength indication measurements by determining a test zone from signal strength indications of a plurality of towers corresponding to the multiple antennas that are in radio-frequency communication with the first mobile wireless communication device and comparing the result of the digital signature location with the test zone, so that the user location database controller determines that the result of the digital signature location is reasonable if the digital signature location is within the test zone.

Traxcell does not allege (nor could it) that HMD or its handset operators control or benefit from the claimed "determining," "storing," "computing" or "comparing."  At most, these elements benefit the network operator—which cannot constitute an infringing use by HMD or its handset operators.  *Id.* at 1329 ("In an analysis of a system claim under *Centillion*, proof of an infringing 'use' of the claimed system under § 271(a) requires the patentee to demonstrate that the direct infringer obtained 'benefit' from each and every element of the claimed system.").  Accordingly, neither HMD nor its handset operators can directly infringe this claim because they do not ***use*** the claimed network within the meaning of that term in § 271(a).

Turning next to the '196 patent, Traxcell alleges no facts whatsoever regarding infringement of its system claims.  Regardless, Traxcell could not allege plausible facts to demonstrate infringement of those claims.  Independent system claim 15 is to a "mobile wireless communications ***network"*** and requires "a directional assistance network coupled to the multiple radio-frequency transceivers" which "determines whether or not the communications device is a one of the one or more mobile wireless communications devices."  Claim 15 recites:

> 15. A mobile wireless communications *network*, comprising:
>
>> multiple radio-frequency transceivers and associated multiple antennas to which the associated radio-frequency transceivers are coupled,
>>
>>> *wherein the multiple radio-frequency transceivers are configured for radio-frequency communication with one or more mobile wireless communications devices*; and
>>
>> *a directional assistance network coupled to the multiple radio-frequency transceivers*,
>>
>>> *wherein the directional assistance network* receives an Internet query initiated at a communications device and directed via the Internet to initiate a request for navigational assistance to a destination and responsive to receiving the Internet query, *determines whether or not the communications device is a one of the one or more mobile wireless communications devices*, and responsive to determining that the communications device is a one of the one or more mobile wireless communications devices, determines and uses a present location of the communication device as a location of the communications device,
>>
>> wherein the directional assistance network, responsive to determining that the communications device is not one of the one or more mobile wireless communications devices, obtains a fixed location associated with the communications device to determine the location of the communications device, and
>>
>> wherein the *directional assistance network provides navigation information to the communications device* in response to the Internet query, and
>>
>> wherein the navigation information provides directions for proceeding from the location of the communications device to a location of the destination.

Neither HMD nor its handset operators control or benefit from a "determin[ation] whether or not" communications device is mobile wireless communications device.[9] Like the '353 patent's system claims, the '196 patent claims do not require a mobile handset—only that the "directional assistance network provides navigation information to the communications

---

[9] The other independent system claim—claim 30—includes a similar limitation: "directional assistance network coupled to the multiple radio-frequency transceivers … determines whether or not the communications device is one of the one or more mobile wireless communications devices."

10

device." Accordingly, neither HMD nor its handset operators can directly infringe the '353 patent's system claims.

### 2. HMD Cannot Infringe Traxcell's Method Claims

Method claims can only be infringed by carrying out each of the claimed steps of the method. *Limelight Networks, Inc.*, 572 U.S. at 921 ("A method patent claims a number of steps; under this Court's case law, the patent is not infringed unless all the steps are carried out."). Manufacture or sale of a product that can carry out the claimed steps is not infringement of a method claim. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773, 775 (Fed. Cir. 1993) ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a)" and "[a] method claim is *directly* infringed only by one practicing the patented method.") (emphasis in original).

Here, the only parties that arguably carry out any steps of the claimed methods are the network—not HMD or its handset operators. To the extent that Traxcell would allege that HMD (or its handset operators) carry out any step of the method claims, Traxcell's infringement claim would fail as a divided infringement claim. *Limelight Networks, Inc.*, 572 U.S. at 923 ("Similarly, in this case, performance of all the claimed steps cannot be attributed to a single person, so direct infringement never occurred.").

Traxcell's FAC makes no plausible factual allegation that HMD or its handset operators carry out one or more steps of the '196 or '353 method claims. Nor could it. Review of the Traxcell method claims shows that all steps are carried out by the network.

Turning first to claim 1 of the '196 patent—specifically addressed in Traxcell's FAC—the FAC makes clear that the "directional assistance service" is "a computer/server operating in a communication network." (FAC, ¶38.) Thus, it is clear that each of the steps of "receiving,"

"determining," and "providing" are carried out by network equipment and not by a handset.

Claim 1 recites:

> 1. A method of providing navigation assistance to a user of a communications device, the method comprising:
>
> > *receiving, by <u>a directional assistance service</u>*, an Internet query initiated at the communications device and directed via the Internet to initiate a request for navigational assistance to a destination;
> >
> > responsive to receiving the Internet query, *determining whether or not the communications device is a mobile wireless communications device*;
> >
> > responsive to determining that the communications device is the mobile wireless communications device, *<u>the directional assistance service</u> determining and using a present location of the mobile wireless communications device as a location of the communications device*;
> >
> > *responsive to determining that the communications device is not the mobile wireless communications device*, obtaining a fixed location associated with the communications device to determine the location of the communications device; and
> >
> > *<u>the directional assistance service</u> providing navigation information to the communications device in response to the Internet query*, wherein the navigation provides directions for proceeding from the location of the communications device to a location of the destination.

Traxcell has not (and cannot) plead plausible facts that HMD or its handset operators carry out any of the steps of claim 1 because they can only be carried out by the network. Claim 29 of the '196 patent includes similar steps carried out by a claimed "directional assistance *network*."

Traxcell's FAC does not allege any facts regarding infringement of the '353 patent method claims. Regardless, Traxcell could not allege plausible facts to demonstrate infringement of such claims. In fact, the claimed method does not require any input from the handset; all required steps are carried out by the network. Moreover, the claim requires the "navigation information" is provided to "a mobile wireless communications *network*" and not to a wireless device. Claim 11 recites:

12

11. *A method of providing navigation information to a <u>mobile wireless communications network</u>*, the method comprising:

> coupling in communication, multiple radio-frequency transceivers and associated multiple antennas to which the associated radio-frequency transceivers are coupled, to a plurality of mobile wireless communication devices;
>
> ***within the mobile wireless communications network, determining a location of a first one of the mobile wireless communications devices*** by comparing a result of a digital signature location with received signal strength indication measurements to determine whether or not the result of the digital signature location is reasonable with a user location database controller coupled to the multiple radio-frequency transceivers, by ***determining a test zone from signal strength indications of a plurality of towers*** corresponding to the multiple antennas that are in radio-frequency communication with the first mobile wireless communications device and comparing the result of the digital signature location with the test zone, so that the user location database controller determines that the result of the digital signature location is reasonable if the digital signature location is within the test zone;
>
> responsive to determining that the result of the digital signature location is reasonable, ***storing the result as the location of the first mobile wireless communications device in a user location database***; and
>
> responsive to determining that the result of the digital signature location is not reasonable, ***computing the location of the first mobile wireless communications device in conformity with the received signal strength indication measurements***.

Traxcell cannot plead any plausible facts that HMD or its handset operators carry out any of the steps of claim 11. Accordingly, neither HMD nor its handset operators can be a direct infringer.

### IV. Traxcell Has Not and Cannot Plead Plausible Facts Showing That HMD Is an Indirect Infringer

Traxcell has not (and cannot) plead plausible facts to show that HMD is an indirect infringer. Traxcell's FAC merely states the legal conclusion that "Defendants have and continue to induce infringement." Traxcell further states that "Defendants have actively encouraged or instructed others (*e.g.*, its customers, suppliers, and competitors), and continue to do so, on how to use its products and services . . . ." (FAC, ¶33 for '353 patent & ¶40 for '196 patent.)

Traxcell never alleges that "customers, suppliers [or] competitors" actually use the claimed systems. However, even if Traxcell were to make an allegation of actual use by HMD handset operators, Traxcell cannot plead plausible facts to show "use" under 35 U.S.C. § 271(a). That is, as explained above, Traxcell cannot show direct infringement by HMD handset operators.

The Supreme Court made clear in *Limelight* that "liability for inducement must be predicated on direct infringement." The Supreme Court emphasized its "***case law leaves no doubt that inducement liability may arise "if, but only if, [there is] ... direct infringement."*** *Limelight*, 572 U.S. at 921 (emphasis added) (citations omitted). *Intellectual Ventures I*, 870 F.3d at 1322 ("[A] finding of direct infringement is a predicate to any finding of indirect infringement").

Because Traxcell has not and cannot plead plausible facts that HMD or its handset operators directly infringe any claim of the '353 or '196 patents, HMD cannot be liable as a direct or indirect infringer. Accordingly, Traxcell's allegations of infringement should be dismissed with prejudice.

**V.     Conclusion**

HMD makes mobile handsets—not mobile networks or their infrastructure equipment. The claims of Traxcell's '353 and '196 patents are exclusively directed to ***mobile wireless communications networks***. Because Traxcell cannot plausibly allege that HMD directly or indirectly infringes these patents, its claims against HMD under both patents should be dismissed.

///

///

///

| | |
|---|---|
| Dated: August 27, 2019 | Respectfully submitted, |

*/s/ William J. McCabe*
JOHN D. PENN, Bar No. 15752300
JPenn@perkinscoie.com
PERKINS COIE LLP
500 N. Akard Street, Suite 3300
Dallas, Texas 75201
Phone: (214) 965-7700
Fax: (214) 965-7799

WILLIAM J. MCCABE
WMcCabe@PerkinsCoie.com
MATTHEW J. MOFFA
MMoffa@PerkinsCoie.com
THOMAS V. MATTHEW
TMatthew@PerkinsCoie.com
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Phone: (212) 262-6900
Fax: (212) 977-1649

*Attorneys for Defendant HMD Global Oy*

**CERTIFICATE OF SERVICE**

      I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 27, 2019.

                                                  */s/ William J. McCabe*
                                                  William J. McCabe