**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **TRAXCELL TECHNOLOGIES, LLC,** | |
| Plaintiff, | |
| v. | **CASE NO. 2:18-CV-00412-RWS-RSP** |
| **NOKIA SOLUTIONS AND NETWORKS US LLC; NOKIA SOLUTIONS AND NETWORKS OY; NOKIA CORPORATION; NOKIA TECHNOLOGIES OY; ALCATEL-LUCENT USA, INC.; HMD GLOBAL OY; AND T-MOBILE, USA, INC.,** | **JURY TRIAL DEMANDED** |
| Defendants. | |

**DEFENDANT HMD GLOBAL OY'S MOTION TO DISMISS**
**UNDER 35 U.S.C. § 101 AND FOR IMPROPER PLEADING**

## **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 1

II.     GROUND ONE: All Claims Under The '388 Patent Should Be Dismissed Because
        The '388 Patent Is Drawn To Ineligible Subject Matter...................................... 2

        A.      Legal Standards ................................................................................................ 2

                1.      Failure to State a Claim ..................................................................... 2

                2.      Patent Eligibility Under 35 U.S.C. § 101 ................................... 4

                        a.      *Alice* Step One: Whether the Claims Are Directed to an Abstract
                                Idea........................................................................................... 4

                        b.      *Alice* Step Two: Whether the Claims Contain an Inventive Concept
                                ................................................................................................... 5

        B.      The '388 Patent's Claims Lack Patent-Eligible Subject Matter .............................. 6

                1.      Claim 1 is the Representative Claim.............................................. 7

                2.      *Alice* Step One: The '388 Patent's Claims Are Directed to an
                        Abstract Idea ...................................................................... 10

                        a.      The '388 Patent's Claims Are Directed to the Abstract Steps of
                                Transmitting, Analyzing, and Presenting Information ................ 11

                        b.      Courts Have Held Similar Claims Abstract at *Alice* Step One ..... 13

                        c.      The '388 Patent's Claims Are Directed to Steps That Can Be
                                Carried Out Mentally or with Pen and Paper............................... 15

                        d.      The '388 Patent's Claims Are Not Directed to Improving the
                                Functionality of a Computer ......................................................... 16

                3.      *Alice* Step Two: The '388 Patent's Claims Lack an Inventive
                        Concept ...................................................................................... 17

                        a.      No Individual Limitation in the '388 Patent's Claims Supplies an
                                Inventive Concept ........................................................................ 18

                        b.      The '388 Patent's Claims Lack an Inventive Concept When
                                Considered as an Ordered Combination ....................................... 21

III.    GROUND TWO: All Claims Under All Three Patents-In-Suit Should Be Dismissed
        Because They Fail To State A Plausible Claim Against HMD ......................... 22

        A.      Procedural Background ........................................................................... 22

        B.      Legal Standards........................................................................................ 23

C.      All Allegations Against "Defendants" In The First Amended Complaint
        Should Be Dismissed .............................................................................................. 24

IV.     CONCLUSION............................................................................................................... 27

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  890 F.3d 1354 (Fed. Cir. 2018)...................................................................................3

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)...................................................................................7

*Adamore v. Southwest Airlines Corp.*,
  Civil Action No. H–11–0564, 2011 WL 6301398 (S.D. Tex. Dec. 5, 2011) .........27

*Affinity Labs. of Tex., LLC v. DirecTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)..............................................................................9, 12

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)........................................................................................ passim

*Apple, Inc. v. Ameranth, Inc.*,
  842 F.3d 1229 (Fed. Cir. 2016)..................................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...........................................................................................3, 24, 27

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
  723 F. App'x 989 (Fed. Cir. 2018) ..............................................................................3

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
  827 F.3d 1341 (Fed. Cir. 2016)..............................................................................6, 21

*Beanal v. Freeport-McMoran, Inc.*,
  197 F.3d 161 (5th Cir. 1999) ....................................................................................27

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 554 (2007)..........................................................................................2, 3, 24, 27

*Berkheimer v. HP Inc.*,
  881 F.3d 1360 (Fed. Cir. 2018)....................................................................................3

*Bilski v. Kappos*,
  561 U.S. 593 (2010)......................................................................................................4

*Bittick v. JPMorgan Chase Bank, MA*,
  No. 4:11–CV–812–A, 2012 WL 1372126 (N.D. Tex. Apr.18, 2012)....................24

*Bowlby v. City of Aberdeen,*
    681 F.3d 215 (5th Cir. 2012) ...................................................................2, 3

*buySAFE, Inc. v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014)..............................................................10, 18

*Concaten, Inc. v. Ameritrak Fleet Sols., LLC,*
    131 F. Supp. 3d 1166 (D. Colo. 2015).........................................................14

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014)............................................................3, 6, 7

*CyberSource Corp. v. Retail Decisions, Inc.,*
    654 F.3d 1366 (Fed. Cir. 2011).........................................................5, 15, 18

*DDR Holdings, LLC v. Hotels.com, L.P.,*
    773 F.3d 1245 (Fed. Cir. 2014)..................................................................6

*Del Castillo v. PMI Holdings N. Am. Inc.,*
    No. 4:14-CV-03435, 2016 WL 3745953 (S.D. Tex. July 13, 2016) ................24, 26

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016).......................................................... passim

*Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP,*
    128 F. Supp. 3d 103 (D.D.C. 2015).........................................................14, 15

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016).......................................................... passim

*FairWarning IP, LLC v. Iatric Sys., Inc.,*
    839 F.3d 1089 (Fed. Cir. 2016)..............................................................10, 12

*Genetic Techs. Ltd. v. Merial L.L.C.,*
    818 F.3d 1369 (Fed. Cir. 2016)..................................................................3

*Glasswall Sols. Ltd. v. Clearswift Ltd.,*
    754 F. App'x 996 (Fed. Cir. 2018) .............................................................12

*Hinojosa v. Livingston,*
    807 F.3d 657 (5th Cir. 2015) ...................................................................24, 25

*In re Plywood Antitrust Litig.,*
    655 F.2d 627 (5th Cir. 1981) ...................................................................24

*In re TLI Commc'ns LLC Patent Litig.,*
    823 F.3d 607 (Fed. Cir. 2016)..................................................................6, 16

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
     792 F.3d 1363 (Fed. Cir. 2015) ......................................................................5, 6

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
     850 F.3d 1315 (Fed. Cir. 2017) ...........................................................................9

*Intellectual Ventures I LLC v. Symantec Corp.*,
     838 F.3d 1307 (Fed. Cir. 2016) ...........................................................................5

*Interval Licensing LLC v. AOL, Inc.*,
     896 F.3d 1355 (Fed. Cir. 2018) ...........................................................................3

*Jones v. Bock*,
     549 U.S. 199 (2007) ..........................................................................................24

*Joseph v. Bernstein*,
     612 F. App'x 551 (11th Cir. 2015) ....................................................................25

*Kinetic Concepts, Inc. v. Wake Forest University. Health Sci.*,
     Nos. SA-11-CV-163-XR, SA-11-CV-713-XR, 2013 WL 2453267 (W.D. Tex.
     June 4, 2013) ...............................................................................................26, 27

*Location Based Servs., LLC v. Niantic, Inc.*,
     295 F. Supp. 3d 1031 (N.D. Cal. 2017) ............................................................14

*Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*,
     594 F.3d 383 (5th Cir. 2010) ...............................................................................2

*Lozano v. Bosdet*,
     693 F.3d 485 (5th Cir. 2012) ...............................................................................1

*McCormack v. NCAA*,
     845 F.2d 1338 (5th Cir. 1988) ...........................................................................24

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
     811 F.3d 1314 (Fed. Cir. 2016) ...........................................................................5

*Norris v. Hearst Tr.*,
     500 F.3d 454 (5th Cir. 2007) .............................................................................24

*Rothschild Location Techs. LLC v. Geotab USA, Inc.*,
     No. 6:15-cv-682-RWS-JDL, 2016 WL 3584195 (E.D. Tex. Jan. 4, 2016) .....13, 14

*SAP Am., Inc. v. Investpic, LLC*,
     898 F.3d 1161 (Fed. Cir. 2018) ......................................................................3, 16

*Secured Mail Sols. LLC v. Universal Wilde, Inc.*,
     873 F.3d 905 (Fed. Cir. 2017) ..............................................................................3

*Stokes v. OneWest Bank, F.S.B.*,
    No. 4:14-CV-247-A, 2014 WL 5473193 (N.D. Tex. Oct. 28, 2014) ...............................24, 25

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    839 F.3d 1138 (Fed. Cir. 2016).........................................................................................4, 15

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017)..........................................................................................21

*Ultramercial, Inc. v. Hulu, LLC*,
    772 F.3d 709 (Fed. Cir. 2014).............................................................................................6

*Versata Dev. Grp., Inc. v. SAP Am., Inc.*,
    793 F.3d 1306 (Fed. Cir. 2015)............................................................................................9

*Washington v. Patterson–UTI Energy, Inc.*,
    No. 5:16–CV–130-RP, 2016 WL 3081060 (W.D. Tex. May 31, 2016)...............................25

*Washington v. U.S. Dep't of Hous. & Urban Dev.*,
    953 F. Supp. 762 (N.D. Tex. 1996) ....................................................................................25

## STATUTES

28 U.S.C. § 1927.............................................................................................................................1

35 U.S.C. § 101 ...................................................................................................................*passim*

## RULES

Fed. R. Civ. P. 8............................................................................................................................25

Fed. R. Civ. P. 8(a)........................................................................................................................23

Fed. R. Civ. P. 8(a)(2)..............................................................................................................23, 24

Fed. R. Civ. P. 12..........................................................................................................................25

Fed. R. Civ. P. 12(b)(6)..........................................................................................................2, 3, 23, 24

Fed. R. Civ. P. 12(e) .....................................................................................................................27

## I.      INTRODUCTION

Defendant HMD Global Oy ("HMD") respectfully submits this case-dispositive motion pursuant to Federal Rule of Civil Procedure ("Rule" or "Fed. R. Civ. P.") 12(b)(6) for dismissal of Traxcell Technologies, LLC's ("Traxcell's") infringement allegations against HMD.[1]

First, Traxcell's allegations of infringement of U.S. Patent No. 9,549,388 (the "'388 Patent") should be dismissed because all claims of the '388 Patent are drawn to an abstract idea that fails the patent eligibility test under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The '388 Patent's claims are directed to the abstract concept of transmitting, analyzing, and presenting information, and they do not set forth an inventive concept that transforms the underlying abstract idea into a patent-eligible application. The claims instead recite generic computer networking components performing well-understood, routine, and conventional functions. As numerous courts have recognized, claims such as Traxcell's that are directed to the idea of transmitting, analyzing, and presenting information and that use computers as mere tools to carry out that idea are invalid under 35 U.S.C. § 101.

Second, *all* claims in Traxcell's First Amended Complaint ("FAC") (D.I. 22) should be dismissed because the FAC does not sufficiently identify conduct of HMD so as to provide HMD with fair notice of the allegations and claims asserted against it. In claiming infringement of the '388 Patent, U.S. Patent Nos. 9,888,353 (the "'353 Patent") and 9,918,196 (the "'196

---

[1] HMD submits this motion to preserve its rights should this Court deem HMD to have been served with process on August 6, 2019. (*See* D.I. 64.) Nevertheless, HMD maintains that its Motion to Dismiss for Lack of Service (D.I. 44) should be granted. Traxcell did not serve HMD within a reasonable time or even within the Court's extended deadline. *See Lozano v. Bosdet*, 693 F.3d 485, 489 (5th Cir. 2012). Traxcell also misrepresented the content and legal effect of its prior service attempts, obligating HMD to engage in significant briefing to set a correct factual record before the Court. (*See* D.I. 44 at 12-16; D.I. 51 at 3; D.I. 63 at 16-18.) If the Court deems HMD served, HMD maintains that it is entitled to its fees (including under 28 U.S.C. § 1927) in connection with Traxcell's delay and repeated misrepresentations regarding service. (D.I. 44 at 19; D.I. 63 at 16-18.)

Patent," and collectively, the "Patents-in-Suit") Traxcell exclusively pleads the actions of "Defendants," a term which is defined to include not only HMD but also *six other parties* unrelated to HMD: Nokia Solutions and Networks US LLC, Nokia Solutions and Networks Oy, Nokia Corporation, Nokia Technologies Oy, Alcatel-Lucent USA Inc., and T-Mobile USA, Inc. Throughout the FAC, Traxcell never identifies which complained-of actions are performed by HMD (versus any other defendant), and never explains how HMD products (versus those of any other defendant) meet the limitations of Traxcell's claims.  Traxcell's FAC also leaves fatally unclear whether certain allegations are made against each defendant individually, or all "Defendants" acting collectively.  Far from a mere error of form, Traxcell's chosen pleading style makes it impossible for HMD to respond to Traxcell's factual allegations and defend this suit.

For the following reasons, the FAC should be dismissed under Rule 12(b)(6).

## II.    GROUND ONE: All Claims Under The '388 Patent Should Be Dismissed Because The '388 Patent Is Drawn To Ineligible Subject Matter

### A.    Legal Standards

#### 1.    Failure to State a Claim

Rule 12(b)(6) allows an accused party to bring a motion to dismiss a claim for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  When considering a Rule 12(b)(6) motion, a court must assume that all well-pleaded facts are true and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012).  The court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.) L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  The court

must then decide whether those facts state a claim for relief that is plausible on its face.  *Bowlby*, 681 F.3d at 219.  "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  The plausibility requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" that the defendant is liable for the alleged misconduct.  *Twombly*, 550 U.S. at 556.

The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."  *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373-74 (Fed. Cir. 2016); *see, e.g.*, *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1345 (Fed. Cir. 2014).  The ultimate question, whether a claim recites patent-eligible subject matter under § 101, is a question of law based on underlying facts, such as whether a claim element is well-understood, routine, and conventional.  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368-69 (Fed. Cir. 2018).  Nevertheless, dismissal under § 101 at the pleadings stage remains appropriate where there are no disputed facts material to patent eligibility.  *See, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1355, 1342 n.4 (Fed. Cir. 2018); *SAP Am., Inc. v. Investpic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 995 (Fed. Cir. 2018).  "In a situation where the specification admits the additional claim elements are well-understood, routine, and conventional, it will be difficult, if not impossible, for a patentee to show a genuine dispute."  *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1356 (Fed. Cir. 2018).

## 2.      Patent Eligibility Under 35 U.S.C. § 101

Section 101 broadly defines patent-eligible subject matter and "contains an important

implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable."

*Alice*, 573 U.S. at 216 (citation omitted).  The "concern that undergirds our § 101 jurisprudence"

is preemption.  *Id.* at 223.  Thus, a claim is not patent-eligible when the claim is so abstract that it

"would effectively grant a monopoly over an abstract idea."  *Bilski v. Kappos*, 561 U.S. 593, 612

(2010).

*Alice*'s patent-eligibility analysis proceeds in two steps.  In *Alice* step one, the court

"determine[s] whether the claims at issue are directed to a patent-ineligible concept," such as an

abstract idea.  *Alice*, 573 U.S. at 218.  Then, in *Alice* step two, a patent directed to an abstract

idea is invalid unless the claims recite an "'inventive concept'—*i.e.*, an element or combination

of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more

than a patent upon the [ineligible concept] itself.'"  *Id.* at 217-18.

### a.      *Alice* Step One: Whether the Claims Are Directed to an Abstract Idea

To evaluate whether a claim is directed to a patent-ineligible abstract idea, courts often

begin by "compar[ing] claims at issue to those claims already found to be directed to an abstract

idea in previous cases."  *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

The Federal Circuit has generally found claims abstract where they are directed to some

combination of transmitting information, analyzing information, and/or displaying the results of

that analysis.  *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir.

2016).

Courts further consider whether the claims are, in essence, directed to a mental process or

a process that could be performed with pen and paper.  *See Synopsys, Inc. v. Mentor Graphics*

*Corp.*, 839 F.3d 1138, 1147 (Fed. Cir. 2016) (finding unpatentable claims for translating a

functional description of a logic circuit into a hardware component description of the logic

circuit); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011)

(finding unpatentable claim for verifying the validity of a credit card transaction over the

Internet); *Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir.

2016) (finding unpatentable claims for computer-implemented system to enable borrowers to

shop for loan packages anonymously).  Another factor is whether the claims cover a

"fundamental . . . practice long prevalent in our system," which suggests that the patent claims an

ineligible abstract idea.  *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363,

1369 (Fed. Cir. 2015) (hereinafter *Capital One Bank*) (quoting *Alice*, 573 U.S. at 219);

*Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1317 (Fed. Cir. 2016) (finding

unpatentable claims for routing email compared to a "brick-and-mortar" post office and a

corporate mailroom).  Additionally, courts consider whether the claims "purport to improve the

functioning of [a] computer itself," *Alice*, 573 U.S. at 225, or whether "computers are invoked

merely as a tool" to carry out an abstract process, *Enfish*, 822 F.3d at 1336.

> **b.**      ***Alice* Step Two: Whether the Claims Contain an Inventive
> Concept**

The second step of the *Alice* framework asks whether the claim contains an element or

combination of elements that "ensure[s] that the patent in practice amounts to significantly more

than a patent upon the [abstract idea] itself."  573 U.S. at 218 (citation omitted).  Transforming

an abstract idea to a patent-eligible application of the idea requires more than simply reciting the

idea followed by "apply it."  *Id*. at 221 (citation omitted).  "For the role of a computer in a

computer-implemented invention to be deemed meaningful in the context of this analysis, it must

involve more than performance of 'well-understood, routine, [and] conventional activities

previously known to the industry.'"  *Content Extraction*, 776 F.3d at 1347-48 (alteration in

original) (quoting *Alice*, 573 U.S. at 225).  Thus, attempts "to limit the use of the abstract idea to

a particular technological environment" are insufficient to render an abstract idea patent-eligible.

*Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) (internal quotation marks

and citation omitted); *Capital One Bank*, 792 F.3d at 1366 ("An abstract idea does not become

nonabstract by limiting the invention to a particular field of use or technological environment,

such as the Internet.").

Claims that merely take an abstract idea and explain how to "apply it on a computer" or

"apply it on a . . . network" are not patent eligible.  *In re TLI Commc'ns LLC Patent Litig.*, 823

F.3d 607, 615 (Fed. Cir. 2016) (citing *Capital One Bank*, 792 F.3d at 1370 and *Alice*, 573 U.S. at

224).  These are unlike claims "necessarily rooted in computer technology in order to overcome

a problem specifically arising in the realm of computer networks," which in contrast can be

sufficiently transformative to supply an inventive concept.  *DDR Holdings, LLC v. Hotels.com,

L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014).  In addition, a "non-conventional and non-generic

arrangement of known, conventional pieces" can amount to an inventive concept.  *BASCOM

Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016).

**B.      The '388 Patent's Claims Lack Patent-Eligible Subject Matter**

The '388 Patent's claims are invalid under § 101.  Each claim is directed to abstract

information gathering and analysis to determine navigation using a map—a process that humans

have employed since time immemorial.  That the claims apply this age-old concept to computing

technology fails to transform the abstract idea into a patent eligible concept.  Further, no

individual element or combination of elements breathes an inventive concept into the claims, as

the claims involve generic steps or components arranged in a routine way.

### 1.     Claim 1 is the Representative Claim

A representative claim is one that is "substantially similar and linked to the same abstract idea." *E.g., Content Extraction*, 776 F.3d at 1348 (citation omitted).  As such, all claims that embody the same abstract idea should "rise or fall together."  *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1344 (Fed. Cir. 2013).

The '388 Patent includes thirty claims, three of which are independent (1, 11 & 21) and twenty-seven of which are dependent.  Claim 1 is to a "wireless communications system," independent claim 21 is to a "wireless mobile communications device," and independent claim 11 is to a "method of providing navigation information within a wireless communications network" using "a wireless mobile communications device."  Here, claim 1 is representative of the '388 Patent's claims because the other claims are all substantially similar and are all directed to the same abstract idea: *displaying navigation information in response to receiving location information*.  Claim 1 reads as follows (emphasis added):

> A wireless communications system including:
>
> a first radio-frequency transceiver within a wireless mobile communications device and an associated first antenna to which the first radio-frequency transceiver is coupled, wherein the first radio-frequency transceiver is configured for radio-frequency communication with a wireless communications network;
>
> *a first processor* within the wireless mobile communications device coupled to the at least one first radio-frequency transceiver *programmed to receive a location of the wireless mobile communications device* from the wireless communications network and generate an indication of a location of the wireless mobile communications device with respect to geographic features according to mapping information stored within the wireless mobile communications device, and *wherein the processor displays to the user navigation information* according to the location of the wireless mobile communications device with respect to the geographic features and a destination specified by the user at the wireless mobile communications device;

at least one second radio-frequency transceiver and an associated at least one second antenna of the wireless communications network to which the second radio-frequency transceiver is coupled; and

*a second processor* coupled to the at least one second radio-frequency transceiver *programmed to determine the location of the wireless mobile communications device*, wherein the second processor selectively determines the location of the wireless mobile communications device dependent on the setting of preference flags, *wherein the second processor determines the location of the wireless mobile communications device if the preference flags are set to a state that permits tracking of the user* of the wireless mobile communications device and communicates the location of the wireless mobile communications device to the first processor via the second radio-frequency transmitter, and *wherein the second processor does not determine and communicate the location of the wireless mobile communications device if the preference flags are set to a state that prohibits tracking* of the wireless mobile communications device.

'388 Patent at 128:45-129:21.

Claim 1 describes (1) a wireless mobile communications device with a first processor, first antenna, and first radio-frequency transmitter, and (2) a wireless communications network comprising a second processor, second antenna, and second radio-frequency transmitter.  The claimed communications system includes preference flags.  If the preference flags are set to a state that permits tracking of the user, the second processor determines the location of the wireless mobile communications device and communicates the location to the wireless mobile communications device, which displays navigation information to the device's user.  If the preference flags are set to a state that prohibits tracking of the user, the second processor does not determine and communicate the location of the wireless mobile communications device.

Independent claim 11 recites the same abstract concept as claim 1 but in method form. Independent claim 21 similarly recites the same abstract concept as claim 1 but from the perspective of the "wireless mobile communications device" rather than the "wireless

communications system."  Although claim 21 also discloses the wireless communications device receiving "additional mapping information," this merely involves the transmission and presentation of additional information and does not substantively alter the scope of the claim for purposes of patent eligibility.  "[R]eceiving transmitted data over a network and displaying it to a user merely implicates purely conventional activities that are the 'most basic functions of a computer.'"  *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1331 (Fed. Cir. 2017) (quoting *Alice*, 573 U.S. at 225).

Claims 2-10 and 24-26 depend from claim 1 and add no limitations material under the *Alice* analysis.[2]  Claim 2 specifies that the "first processor . . . determines the user navigation information," but does not disclose ***how***.  "[A] claim reciting an abstract idea . . . requires more than simply stating an abstract idea while adding the words 'apply it' or 'apply it with a computer.'"  *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1331-32 (Fed. Cir. 2015) (stating that "the prohibition on patenting an ineligible concept cannot be circumvented by limiting the use of an ineligible concept to a particular technological environment").  Claims 3 and 4 recite "requesting additional mapping information" like independent claim 21, and claims 6-10 and 24-26 are also directed to transmitting additional information (*e.g.*, "traffic congestion information," "updated user navigation information," and "preference flags") through the network.  None of these claims disclose how such information is generated in the first instance or analyzed upon receipt; they merely recite the transmission of additional information.  Such limitations are immaterial for purposes of assessing patent eligibility.  *See Affinity Labs. of Tex.,*

---

[2] Claims 12-20 and 27-29 depend from claim 11 and include limitations that parallel those of claims 2-10 and 24-26. Claims 22, 23, and 30 depend from claim 21 and include limitations that parallel those of claims 7-9 and 25.  None of these dependent claims add any limitations material under the Alice analysis.

*LLC v. DirecTV, LLC*, 838 F.3d 1253, 1261 (Fed. Cir. 2016) (finding claims reciting "the conveyance and manipulation of information" as ineligible due to abstractness).  Claims 25 and 26 recite an additional generic hardware component—a "third processor"—but when a patent claim merely recites implementing an abstract idea using generic components, the recitation of hardware does not transform the claim from an abstract idea into patentable subject matter.  *See buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014).  Finally, claim 5 recites "displaying a notice to the user that the destination could not be found."  The Federal Circuit has held that merely "announcing the result" of a "claimed abstract idea of collecting and analyzing information" cannot transform the abstract idea into a patent-eligible application.  *See FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016).

Because all claims of the '388 Patent are "substantially similar and linked to the same abstract idea," claim 1 is the representative claim for purposes of the *Alice* analysis and all of the '388 Patent's claims should rise or fall together.

## 2. *Alice* Step One: The '388 Patent's Claims Are Directed to an Abstract Idea

The '388 Patent's claims are directed to the abstract idea of displaying navigation information in response to receiving location information.  These claims are abstract because: (1) they are directed to the abstract steps of transmitting, analyzing, and presenting information; (2) courts have held similar claims abstract; (3) they are directed to steps that can be carried out mentally or with pen and paper; and (4) they are not directed to improving the functionality of a computer.

a.    **The '388 Patent's Claims Are Directed to the Abstract Steps of Transmitting, Analyzing, and Presenting Information**

Claim 1 of the '388 Patent (representative of all the '388 Patent's claims) recites generic components[3] that perform the following functions: (1) "receiv[ing] a location of the wireless mobile communications device from the wireless communications network"; (2) "generat[ing] an indication of a location of the wireless mobile communications device with respect to geographic features according to mapping information stored within the wireless mobile communications device"; (3) "display[ing] to the user navigation information according to the location of the wireless mobile communications device with respect to the geographic features and a destination specified by the user at the wireless mobile communications device"; (4) "determin[ing] the location of the wireless mobile communications device[] . . . dependent on the setting of preference flags"; and (5) "communicat[ing] the location of the wireless mobile communications device to the first processor."  The first three functions are performed by the wireless mobile communications device and the last two functions are performed by the wireless communications network.

Analyzing claim 1's "character as a whole," *see Enfish*, 822 F.3d at 1335, reveals that it is directed to transmitting location information and displaying navigation information based on the location information.  The Federal Circuit has routinely held that patent claims directed to nothing more than the abstract steps of transmitting, analyzing, and presenting information are patent-ineligible.  *See Elec. Power Grp.*, 830 F.3d at 1354 (finding claims abstract at *Alice* step one where "[t]he advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly

---

[3] The '388 Patent's claims recite generic, conventional computer components, as will be discussed *infra* § II.B.3.a.

inventive technology for performing those functions"); *FairWarning*, 839 F.3d at 1093-94

(finding claims abstract at *Alice* step one because the claims were directed to a combination of

"abstract-idea categories": "collecting information, including when limited to particular content,"

"analyzing information," and "presenting the results of abstract processes of collecting and

analyzing information").

 In addition, the '388 Patent's claims are purely functional in nature and fail to recite how

the claimed functions are achieved.  Claim 1 of the '388 Patent recites "receiv[ing]" a location,

"generat[ing]" an indication of a location, "display[ing]" navigation information,

"determin[ing]" the location, and "communicat[ing]" the location, but does not specify a

particular, non-abstract way of performing these functions.  Such results-based, functional

language suggests that the claims are drawn to the abstract idea, doing no more than describing a

desired function or outcome.  *See Glasswall Sols. Ltd. v. Clearswift Ltd.*, 754 F. App'x 996, 998

(Fed. Cir. 2018), *petition for cert. filed*, No. 18-1448 (May 20, 2019) (holding that apparatus

claims were directed to an abstract idea where "the claims are framed in wholly functional terms,

with no indication that any of these steps are implemented in anything but a conventional way");

*Affinity Labs.*, 838 F.3d at 1258-59 (holding that claims were directed to an abstract idea where

they claimed "the function of wirelessly communicating regional broadcast content to an out-of-

region recipient, not a particular way of performing that function"); *Apple, Inc. v. Ameranth,

Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (holding that claims were directed to an abstract idea

where they claimed "systems including menus with particular features" but "do not claim a

particular way of programming or designing the software to create menus that have these

features, but instead merely claim the resulting systems"); *Elec. Power Grp.*, 830 F.3d at 1356

(describing the "important common-sense distinction between ends sought and particular means

of achieving them, between desired results (functions) and particular ways of achieving

(performing) them," and quoting with approval the district court's observation that "there is a

critical difference between patenting a particular concrete solution to a problem and attempting

to patent the abstract idea of a solution to the problem in general").

Because the '388 Patent's claims are directed to the abstract idea of transmitting,

analyzing, and presenting information and are drafted in purely functional language, they are

abstract under *Alice* step one.

### b.      Courts Have Held Similar Claims Abstract at *Alice* Step One

As discussed *supra* § II.B.2.a, the Federal Circuit has repeatedly held that claims like the

'388 Patent's that are directed to information transmission, analysis, and presentation—in

particular, such claims that are drafted using purely functional, results-based language—reside

squarely in the realm of abstract ideas.  In addition, the '388 Patent's claims are similar to claims

in the mapping/navigation context that district courts have found to be directed to abstract ideas.

In *Rothschild Location Techs. LLC v. Geotab USA, Inc.*, No. 6:15-cv-682-RWS-JDL,

2016 WL 3584195 (E.D. Tex. Jan. 4, 2016), *report and recommendation adopted*, 2016 WL

2847975 (E.D. Tex. May 16, 2016), this Court invalidated under § 101 claims directed to

receiving for display on a user device location information transmitted from a server in a

communications network.  *Id*. at *1-2.  This Court found the claims invalid because they were

"directed to the abstract idea of retrieving an address from another location."  *Id*. at *5.  As the

Court explained:

> [C]laim 1 of the '503 patent, directed to address retrieval, involves
> a fundamental concept humans have long performed. As Defendants
> recognize, humans have long been able to retrieve an address from
> another location—by calling an operator or an assistant to ask for
> the address, for example.

*Id*. at \*6.  The Court further found that the purported benefits of the claimed invention "simply relate to ease, accuracy, and efficiency benefits achieved when any fundamental or well-known concept is implemented on a computer device."  *Id*.  The claims at issue in *Rothschild* were found to be abstract because they only required the "fundamental steps of requesting, retrieving, and transmitting information," *id*. at \*7—just like the '388 Patent's claims.

Similarly, in *Location Based Servs., LLC v. Niantic, Inc.*, 295 F. Supp. 3d 1031 (N.D. Cal. 2017), *aff'd*, 742 F. App'x 506 (Fed. Cir. 2018), the Court invalidated the claims of four patents directed to computer systems and methods for receiving and displaying map-related data. *Id*. at 1039, 1045.  The Court found that the claims "encompasse[d] any processing and displaying of desired mapping information based on location-based or user-based data," which the Court described as "directed to the receipt, processing, and display of data," and thus, abstract.  *Id*. at 1047.  The Court synthesized multiple authorities to conclude that "patents directed to little more than assisting the user to find specific locations, and information about those locations on maps are abstract."  *See id*. at 1046-47.

In *Concaten, Inc. v. Ameritrak Fleet Sols., LLC*, 131 F. Supp. 3d 1166, 1170 (D. Colo. 2015), *aff'd*, 669 F. App'x 571 (Fed. Cir. 2016), the Court found abstract a claim describing a method for (a) receiving over a wireless cellular network information about snow vehicle locations; (b) processing the information at a server to provide a map and instructions for the operator of a vehicle; and (c) providing the information over the network to the operator for display.  *Id*. at 1170.  The Court found that "the claim is drawn to the concept of receiving, processing, and transmitting data" and declared that an abstract idea.  *Id*. at 1174.

And in *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro LLP*, 128 F. Supp. 3d 103 (D.D.C. 2015), *aff'd*, 653 F. App'x 764 (D.C. Cir. 2016), the Court found abstract claims reciting

(1) "displaying a map on a display screen and changing the portion of the map being displayed in response to user input," (2) "allowing users to look up information about places marked on a map," and (3) "providing 'text search' and 'text browse' features that allow a user to select a place and then display the portion of the map showing the location of that place." *Id*. at 111-12. There, the Court found that "[t]his abstract concept of collecting, recognizing, and storing data is not patent-eligible." *Id*. at 112.

**c.    The '388 Patent's Claims Are Directed to Steps That Can Be Carried Out Mentally or with Pen and Paper**

The '388 Patent's claims could be performed in the human mind or by a person with a pen and paper to achieve the same result of determining how to navigate to a destination based on information regarding current location.  Claims directed to a method that can be performed mentally or with pen and paper—such as these—are abstract.  *Synopsys*, 839 F.3d at 1146; *CyberSource,* 654 F.3d at 1372.

Imagine a scenario where a person (*i.e.*, the "wireless mobile communications device," or user of said device) has become lost in an unfamiliar city *en route* to a destination.  Consulting his map is of no help because he does not know where he is.  He stops a passerby (*i.e.*, the "wireless communications network") and asks where he is (*i.e.*, "determine the location").  After receiving the passerby's response (*i.e.*, "receive a location"), the lost individual uses the information to situate himself on his map (*i.e.*, "generate an indication of a location").  No longer lost, he draws the route to his destination on his map (*i.e.*, "displays . . . navigation information").

The above steps are precisely those carried out by the '388 Patent's claims and amount to nothing more than data collection and analysis steps that can be performed by the human mind or with pen and paper.  The wireless communications network analyzes (*i.e.*, "determine[s] the

15

location"), transmits the result of that analysis to the wireless mobile communications device (*i.e.*, "receive[s] a location"), which performs further analysis (*i.e.*, "generate[s] an indication of a location") and displays the result (*i.e.*, "displays . . . navigation information").  Merely analyzing collected data is abstract.  *See Elec. Power Grp.*, 830 F.3d at 1354 ("[A]nalyzing information by steps people go through in their minds, or by mathematical algorithms, without more, [are] essentially mental processes within the abstract-idea category.") (collecting cases).  Furthermore, "merely presenting the results of abstract processes of collecting and analyzing information . . . is abstract as an ancillary part of such collection and analysis."  *Id.*

> ### d.  The '388 Patent's Claims Are Not Directed to Improving the Functionality of a Computer

At *Alice* step one, the Federal Circuit has distinguished between patent-eligible claims that are "directed to an improvement in the functioning of a computer" and patent-ineligible claims, which include "simply adding conventional computer components to well-known business practices" or "generalized steps to be performed on a computer using conventional computer activity."  *See In re TLI*, 823 F.3d at 612 ("[A] relevant inquiry at step one is 'to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea.'") (quoting *Enfish*, 822 F.3d at 1335).  The '388 Patent's claims are of the latter, patent-ineligible kind, and do not improve computer functionality.

In *SAP America, Inc. v. Investpic, LLC*, the Federal Circuit held that claims directed to collecting, analyzing, and displaying information were abstract under *Alice* step one where "the focus of the claims is not any improved computer or network, but the improved mathematical analysis; and indeed, the specification makes clear that off-the-shelf computer technology is usable to carry out the analysis."  898 F.3d at 1168.

The '388 Patent's specification makes clear that it is not directed to an improved computer or network.  In describing its purported benefits, the '388 Patent states that "as many new wireless software programs are increasingly using location based technology in the form of GPS, this invention would then increase the profitability of companies by using this technology for their software *because it is based on existing infrastructure and would not require a consumer, who possesses a wireless device 104, to purchase any additional equipment*."  '388 Patent at 17:51-58 (emphasis added).  In addition, "[t]he machine and process are compatible with existing 2nd generation wireless device network 100 and future 3rd generation wireless device networks 200." *Id*. at 18:16-20.  The '388 Patent is therefore directed to abstract functions where "computers are invoked merely as a tool." *Enfish*, 822 F.3d at 1336.

The '388 Patent's claims confirm that the alleged invention is not directed to an improvement in computer technology.  As discussed *supra* § II.B.2.a, the claims are drafted using results-based functional language offering no guidance on how to improve the functioning of the recited hardware components in any way.  And as discussed *infra* § II.B.3.a, the hardware disclosed in the claims are generic and conventional computer components that the specification acknowledges were known in the prior art.

The '388 Patent does not address a technical problem in the computer field but instead implements conventional information-processing functionality on generic computer and network hardware.  This confirms that its claims are abstract under *Alice* step one.

### 3.    *Alice* Step Two: The '388 Patent's Claims Lack an Inventive Concept

Because the '388 Patent's claims are directed to an abstract idea, those claims are not patent eligible unless the claims include "additional features to ensure that the claim[s are] more than a drafting effort designed to monopolize the abstract idea." *Alice*, 573 U.S. at 221.  But whether considered individually or as an ordered combination, the claims contain only well-

known, routine, and conventional functionality that does not amount to significantly more than the abstract idea itself. *See id*. at 217-18.  Although the Federal Circuit has held that *Alice* step two may be based on underlying facts, such as whether a claim element is well-understood, routine, and conventional, there is no question of fact here that prevents resolution at the pleading stage.  The specification here admits that the claim elements are well-understood, routine, and conventional.

> ### a.   No Individual Limitation in the '388 Patent's Claims Supplies an Inventive Concept

The limitations of the '388 Patent's claims, assessed individually, reflect at most generic computer implementations of the underlying abstract idea.  Claim 1 recites the results-based, functional steps of "receiv[ing]" information, "generat[ing]" further information, "display[ing]" navigation information, "determin[ing]" information, and "communicat[ing]" information in a network environment.  These are all well-understood, routine, and conventional functions.

Receiving information is not an inventive concept. *See, e.g., CyberSource*, 654 F.3d at 1372 (holding that step requiring "obtaining information" can be performed by a human reading that information).  Nor is the use of "preference flags" to dictate whether the wireless communications network determines the location of the mobile wireless communications device and communicates the location information to it.  If "receiv[ing] and send[ing] information over a network . . . is not even arguably inventive," *buySAFE,* 765 F.3d at 1355, there is nothing transformative about selectively ***not*** sending that information over a network on the basis of preference flags, where (as here) the claims take no other action when those flags are set.

The recited components that carry out the claimed functions are generic and conventional computer components.  The '388 Patent's claims disclose (1) a wireless mobile communications device comprising a first processor, first antenna, and first radio-frequency transmitter, and (2) a

wireless communications network comprising a second processor, second antenna, and second radio-frequency transmitter.  "Nothing in the claims, understood in light of the specification, requires anything other than off-the-shelf, conventional computer, network, and display technology for gathering, sending, and presenting the desired information." *Elec. Power Grp.*, 830 F.3d at 1355.

Indeed, the '388 Patent itself acknowledges that these components were commonplace and known in the art.  Figure 1 depicts a prior art "typical second generation wireless network architecture," '388 Patent at 7:60-61:



Wireless device 104, which "may take the form of a . . . personal digital assistant (PDA), laptop computer, personal communications system, vehicle mounted system, etc.," communicates via "[r]adio frequency (RF) signal 106" with "radio tower and base-station transceiver subsystem (BTS) 300," *id*. at 3:15-21, depicted in prior art Figure 3:



The radio tower with which wireless device 104 communicates includes "receiver antennas and transmit antennas . . . elevated by the radio tower pole 312 and connected to the BTS by antenna leads 314." *Id*. at 4:27-30.  The BTS "synchronize[s] the communications signal and allow[s] decoding of the digitized wireless device 104 radio frequency signal 106." *Id*. at 3:27-29.

Wireless device 104 and radio tower and BTS 300, which communicate with each other via radio frequency signal, each clearly contains an antenna and radio-frequency transmitter. Wireless device 104, which may be a laptop computer, clearly contains a processor, as does the BTS, which would require a processor to perform the synchronization and decoding tasks described in the specification.

Because the features recited in the '388 Patent's claims reflect only generic computer elements, they cannot individually confer patentability to the claims.

20

b.      **The '388 Patent's Claims Lack an Inventive Concept When Considered as an Ordered Combination**

"[A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *BASCOM*, 827 F.3d at 1350.  Here, however, considering the '388 Patent's claims as an ordered combination still fails to yield an inventive concept that transforms the abstract idea into a patent-eligible invention.  The claims lack any "non-conventional and non-generic arrangement of known, conventional pieces" that could suggest an inventive concept.  *See Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (internal citation omitted).  In *Two-Way Media*, the claims "use[] a conventional ordering of steps—first processing the data, then routing it, controlling it, and monitoring its reception—with conventional technology to achieve its desired result." *Id.* The '388 Patent's claims set forth a conventional arrangement by which location information about a user is determined and transmitted, and that information is used for "generat[ing]" and "display[ing]" navigation information to said user.  Receiving information, analyzing the information, and outputting a result of the analysis is a conventional order of steps.  The ordered combination, whether implemented on a computer or not, adds nothing, because it "merely recit[es] an abstract idea performed on a set of generic computer components." *Id.*

Furthermore, the "ordered combination" of steps in the '388 Patent's claims directly tracks the order of operations in the "pen and paper" example discussed *supra* § II.B.2.c.  Indeed, this order is not only logical, but necessary: location information must be determined before it is transmitted and received and must further be received before it can be analyzed for purposes of displaying navigation information to the user.

Because the features recited in the '388 Patent's claims reflect only a conventional and generic arrangement of known, conventional pieces, their combination cannot confer patentability to the claims.

## III.   GROUND TWO: All Claims Under All Three Patents-In-Suit Should Be Dismissed Because They Fail To State A Plausible Claim Against HMD

### A.   Procedural Background

On February 21, 2019, Traxcell filed its FAC against T-Mobile USA, Inc., ("T-Mobile"), HMD, and a variety of entities affiliated with Nokia: Nokia Solutions and Networks US LLC, Nokia Solutions and Networks Oy, Nokia Corporation, Nokia Technologies Oy, and Alcatel-Lucent USA Inc.  (FAC at 1.)  In an unnumbered paragraph at the start of the FAC, Traxcell defines "Nokia" to encompass these five Nokia-affiliated entities, and then defines the term "Defendants" as "HMD, Nokia, and T-Mobile." (*Id.*)

Traxcell's FAC alleges that each named defendant is liable for infringement of the '353 and '196 Patents, and that each defendant except T-Mobile is liable for infringement of the '388 Patent.  However, nearly all of Traxcell's factual allegations are levied against the "Defendants" collectively.  For example, as for the '388 Patent, Traxcell states:

> ***Defendants*** make, use, offer to sell, or sell within or import into the U.S. wireless communication devices, wireless networks, wireless-network components, and related services that use online and/or off-line navigation such that ***Defendants*** infringe one or more claims of the '388 patent, including—for example, but not by way of limitation—Claims 1-30, literally or under the doctrine of equivalents.

(FAC ¶ 26 (emphasis added).)

Traxcell then provides a "preliminary chart illustrating examples of Plaintiff's claims for infringement." (*Id.*)  However, as in the preceding paragraph the chart does not set forth specific acts of infringement by any defendant.  Instead, it provides a column of "Corresponding Structure in Accused Systems"—again, without identifying which (if any) defendant "makes,

uses, offers to sell, or sells" the accused system or the accused elements thereof.[4]  For example,

for the limitation "a second processor coupled to the at least one second radio-frequency

transceiver programmed to determine the location of the wireless mobile communications

device," the chart lists: "Plaintiff contends each Google Maps hardware/software operating in

wireless communication network [sic], corresponds to this claim limitation because each such

Google Maps hardware/software serves as a processor and as medium of communication

between Google Maps application and wireless communication network (cellular)"—without

connecting the so-called "Google Maps hardware/software" to any defendant in any way.

Following the "preliminary chart," Traxcell then provides three paragraphs of boilerplate

allegations against "Defendants" and their "acts complained of herein."  These paragraphs,

replete with legal conclusions, never allege an infringing "act" by HMD—or, for that matter, any

of the six other defendants.  (FAC ¶¶ 27-29.)  Traxcell also incoherently switches from referring

to "Defendants" as a plural noun (suggesting all seven defendants are being referred to) and as a

singular noun (suggesting an unspecified one of the defendants is being referred to), *e.g.*,

"Defendants have [plural] and continue to induce infringement. . . . Defendants knew and should

have known that it was [singular] and would be inducing infringement."  (*Id.* at ¶ 28.)

Materially identical allegations are made in the FAC under the '353 Patent and the '196

Patent.  (*Id.* at ¶¶ 32-34, 37-41.)

### B.    Legal Standards

Rule 12(b)(6), which allows dismissal if a plaintiff fails "to state a claim upon which

relief can be granted," must be read in conjunction with Rule 8(a), which requires "a short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

---

[4] In point of fact, the term "Accused System" is used throughout the FAC but is never defined at all, let alone attributed to a specific defendant or defendants.

8(a)(2), 12(b)(6); *Twombly*, 550 U.S. at 555.  A complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 697.

When reviewing a motion to dismiss, courts look only to the allegations in the complaint to determine whether they are sufficient to survive dismissal.  *See Jones v. Bock*, 549 U.S. 199, 215 (2007).  To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "'a formulaic recitation of the elements of a cause of action will not do.'" *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Rather, a complaint must state direct or inferential allegations concerning **all** the material elements necessary for recovery under the relevant legal theory.  *See In re Plywood Antitrust Litig.*, 655 F.2d 627, 641 (5th Cir. 1981).  The Court should not assume facts that the plaintiff has not alleged.  *See McCormack v. NCAA*, 845 F.2d 1338, 1343 (5th Cir. 1988).

Allegations using blanket terms for multiple defendants are properly disregarded from a pleading unless the reference to the individual defendants can be clearly inferred.  *See Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015).  A pleading that "lump[s] together multiple defendants . . . while providing insufficient factual basis on which to distinguish the individual defendant's conduct" should be dismissed for "fail[ing] to satisfy the pleading requirements of Rules 8(a)(2) and 12(b)(6)."  *Del Castillo v. PMI Holdings N. Am. Inc.*, No. 4:14-CV-03435, 2016 WL 3745953, at *17 (S.D. Tex. July 13, 2016).

C.     **All Allegations Against "Defendants" In The First Amended Complaint Should Be Dismissed**

A complaint should be dismissed if it "makes only generalized allegations as to all defendants globally, such that [no one defendant] can tell with certainty what claims are alleged against them."  *Stokes v. OneWest Bank, F.S.B.*, No. 4:14-CV-247-A, 2014 WL 5473193, at *2 (N.D. Tex. Oct. 28, 2014) (citing *Bittick v. JPMorgan Chase Bank, MA*, No. 4:11–CV–812–A,

24

2012 WL 1372126, at *7 (N.D. Tex. Apr.18, 2012); *Washington v. U.S. Dep't of Hous. & Urban Dev.*, 953 F. Supp. 762, 770 (N.D. Tex. 1996)); *see also Joseph v. Bernstein*, 612 F. App'x 551, 555 (11th Cir. 2015) (affirming dismissal of complaint that "indiscriminately groups the defendants together").  Dismissal is equally appropriate where a pleading fails to distinguish between defendants "in a way that allows Defendants and the Court to understand what role each allegedly plays in Plaintiffs' claims."  *Washington v. Patterson–UTI Energy, Inc.*, No. 5:16–CV–130-RP, 2016 WL 3081060, at *3 (W.D. Tex. May 31, 2016).

The FAC collectively refers to HMD, T-Mobile, and various Nokia entities as "Defendants," (FAC at 1), and relies on that collective identifier to make vague allegations against some or all of the defendants simultaneously.  Traxcell's patents are directed to "wireless communication system[s]" ('388 Patent), "wireless communication network[s]" ('353 Patent), and methods implemented by a "directional assistance service" ('196 Patent); however, Traxcell never says if or when a particular defendant makes, uses, or sells an infringing system, network, or service.  Some allegations appear implausible as to handset-maker HMD (for example, those related to a "wireless communication network"), but HMD cannot tell with certainty which of the seven defendants Traxcell raises each allegation against.  Such a complaint fails to sufficiently state a claim for infringement under Rules 12 and 8, and is appropriately dismissed. *See, e.g.*, *Stokes*, 2014 WL 5473193, at *2; *Patterson–UTI Energy*, 2016 WL 3081060, at *3.

Traxcell's allegations make no distinction among the various defendants sufficient to put each defendant on notice of which allegations pertains to which defendant.  *See Hinojosa*, 807 F.3d at 684 (dismissing allegation using collective term "Defendants" where it was "not a plausible inference" that one of the referred-to defendants could have taken the alleged action). As an example, Traxcell pleads that "Defendants" had pre-suit notice of the patents: "Defendants

have known and should have known of the '388 patent . . . [because] the patent's underlying application was cited to Defendants by the U.S. Patent and Trademark Office during prosecution of one of Defendants' patent applications . . ."  (FAC ¶ 28.)  But HMD, Nokia, and T-Mobile are entirely separate entities—a fact that Traxcell has acknowledged, at least with regards to T-Mobile.  (D.I. 60 at 4 ("T-Mobile, however, is not a subsidiary or otherwise related to HMD, and the new patent infringement allegations against T-Mobile do not implicate HMD.").)  It is implausible that Traxcell's allegation of pre-suit knowledge of the '388 Patent could apply generally to all defendants, yet HMD cannot discern *which* of the "Defendants" Traxcell imputes that knowledge to.

In *Del Castillo*, the court granted a defendant's motion to dismiss the complaint where the plaintiff had employed a "collective pleading style" that "failed to give [the defendant] fair notice of the allegations against it" and provided an "insufficient factual basis on which to distinguish the individual defendant's conduct."  2016 WL 3745953, at *17.  The court further found that even if the defendant had been properly distinguished in the complaint, dismissal would still be warranted because the plaintiff had similarly failed to identify the ***product*** giving rise to that defendant's liability.  *Id.*  Likewise, here, Traxcell's pleading style not only fails to distinguish HMD from the other defendants, it fails to identify what—if any—HMD product is plausibly accused of infringing the patents.

Courts have also found the use of collective terms improper where such terms are employed inconsistently or incorrectly.  In *Kinetic Concepts, Inc. v. Wake Forest University. Health Sci.*, Nos. SA-11-CV-163-XR, SA-11-CV-713-XR, 2013 WL 2453267 (W.D. Tex. June 4, 2013), the Court dismissed the defendant-counterclaimant's patent infringement claims for using a collective term to refer to the plaintiffs, stating that "[w]hile collective identifiers may be

appropriate in some instances, [patent owner] has not adequately utilized the collective term . . .

in this case because, at several points throughout the Answer, [patent owner] uses the term . . . in

ways that are inconsistent or plainly incorrect." *Id*. at *6.  Traxcell similarly uses the collective

term "Defendants" in ways that are inconsistent and incorrect.  For example, Traxcell switches

indiscriminately between referring to "Defendants" as a plural noun (suggesting all seven

defendants are being referred to) and as a singular noun.  (FAC ¶ 28.)  As another example, in its

FAC Traxcell explicitly notes that it is "not asserting the '388 patent against T-Mobile in this

cause of action," (*Id*. at 7 n.1), then proceeds to use the term "Defendants"—which includes T-

Mobile—for all of its allegations regarding the '388 Patent.  (*Id*. ¶¶ 26-29.)  As in *Kinetic*

*Concepts*, Traxcell's indiscriminate use of a collective term renders it "impossible for the

[defendants], and the Court, to discern which allegations and claims are referring to which

specific . . . entity," warranting dismissal.  *Kinetic Concepts*, 2013 WL 2453267, at *6.

## IV.    CONCLUSION

For the reasons set forth in Ground One above, HMD respectfully requests that the Court

dismiss with prejudice all of Traxcell's claims regarding the '388 Patent as that patent is drawn

to ineligible subject matter.

Separately, for the reasons set forth in Ground Two above, HMD respectfully requests

that the Court dismiss the First Amended Complaint in its entirety because it fails to provide

HMD—or any other defendant—with fair notice of the allegations and claims asserted against it.

*See Twombly*, 550 U.S. at 555.[5]

---

[5] Even if the Court finds that the FAC provides sufficient notice under *Iqbal* and *Twombly*, the Court should nevertheless order Traxcell under Rule 12(e) to provide a more definite statement, with sufficient facts and clarity for HMD to frame a responsive pleading.  *Cf. Adamore v. Southwest Airlines Corp.*, Civil Action No. H–11–0564, 2011 WL 6301398, *3 (S.D. Tex. Dec. 5, 2011) (citing the pre-*Iqbal/Twombly* authority *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999)).

Dated: August 27, 2019

Respectfully submitted,

*/s/ William J. McCabe*
JOHN D. PENN, Bar No. 15752300
JPenn@perkinscoie.com
PERKINS COIE LLP
500 N. Akard Street, Suite 3300
Dallas, Texas 75201
Phone: (214) 965-7700
Fax: (214) 965-7799

WILLIAM J. MCCABE
WMcCabe@PerkinsCoie.com
MATTHEW J. MOFFA
MMoffa@PerkinsCoie.com
THOMAS V. MATTHEW
TMatthew@PerkinsCoie.com
PERKINS COIE LLP
1155 Avenue of the Americas, 22nd Floor
New York, New York 10036-2711
Phone: (212) 262-6900
Fax: (212) 977-1649

*Attorneys for Defendant HMD Global Oy*

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 27, 2019.

/s/ William J. McCabe
William J. McCabe