UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TRAXCELL TECHNOLOGIES, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 2:18-cv-412 |
| v. | ) | |
| | ) | |
| NOKIA SOLUTIONS AND | ) | |
| NETWORKS US LLC; NOKIA | ) | |
| SOLUTIONS AND NETWORKS OY; | ) | JURY TRIAL DEMANDED |
| NOKIA CORPORATION; NOKIA | ) | |
| TECHNOLOGIES OY; | ) | |
| ALCATEL-LUCENT USA, INC.; HMD | ) | |
| GLOBAL; AND HMD GLOBAL OY, | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO HMD GLOBAL OY'S MOTION TO DISMISS UNDER
35 U.S.C. § 101 AND FOR IMPROPER PLEADING**

**TABLE OF CONTENTS**

I.      INTRODUCTION...........................................................................................1

II.     STATEMENT OF PERTINENT FACTS ................................................1

III.    LEGAL STANDARD TO DETERMINE PATENT ELIGIBILITY ....................2

IV.     THE CLAIMS OF THE ASSERTED PATENTS ARE PATENT ELIGIBLE

        A.   The Claims of the '388 Patent are Patent Eligible ................................3

        1.   The Claims of the '388 Patent are Patent Eligible at Step 1 .............3

        2.   The Claims of the '388 Patent are Likewise Patent Eligible at Step 2 .............4

        B.   Defendants Case Law Does Not Support Their Position...........................4

        C.   The '388 Patent Claims Cannot Be Carried Out Mentally Or With
             Pen And Paper...........................................................................6

        D.   The Claims Of The '388 Patent Are Directed To Improving Location Based
             Services On Wireless Mobile Communication Devices ...........................7

        E.   The '388 Patent Claims Satisfy *Alice* Step Two .................................8

V.      TRAXCELL'S INFRINGEMENT CLAIMS STATE PLAUSIBLE CLAIMS
        AGAINST HMD AND, SO, SHOULD NOT BE DISMISSED............................10

VI.     CONCLUSION ........................................................................13

# TABLE OF AUTHORITIES

## Cases

*Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014) ..................................................................... 2

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018) ............................................................... 2

*Concaten, Inc. v. AmeriTrak Fleet Sols., LLC,* 131 F. Supp. 3d 1166 (D. Colo. 2015) ................. 6

*CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366 (Fed. Cir. 2011) .............................. 7

*InfoGation Corp. v. ZTE Corp.*, Case No. 16-cv-1901-H-JLB, 2017 U.S. Dist. LEXIS 44873 at *4-5 (S.D. Cal. Mar. 27, 2017) ...................................................................................................................... 9

*Location Based Servs., Inc. v. Niantic, Inc*., 295 F. Supp. 3d 1031 (N.D. Cal.) .......................... 5

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012) ...................................................................................................................................... 2

*Rothchild Location Techs. LLC v. Geotab USA, Inc.*, Case No. 6:15-cv-682-RWS-JDL, 2016 U.S. Dist. LEXIS 64121 at *15 (E.D. Tex. Jan. 4, 2016) ......................................................................... 5

*SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018) ................................................ 8

*Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147-48 (Fed. Cir. 2016) .................. 7

*TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 612 (Fed. Cir. 2016) ............................... 8

*Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019) ............................. 2

Plaintiff Traxcell Technologies, LLC ("Traxcell") files this Opposition to Defendant HMD Global Oy's ("HMD") Motion to Dismiss Under 35 U.S.C. § 101 and for Improper Pleading (Dkt. No. 68) as follows.

## I.        INTRODUCTION

Traxcell opposes the Motion under § 101 because 1) factually the '388 Patent is valid under that section whether the Motion is considered a motion to dismiss or a motion for summary judgment, and 2) as a matter of law, the '388 Patent claims patent eligible subject matter under § 101.  Traxcell opposes the Motion for allegedly improper pleading because Traxcell explained in sufficient detail HMD's accused infringing activities and the basis for its complaint.  As such, the Motion should be denied.

## II.       STATEMENT OF PERTINENT FACTS

1. Traxcell alleged infringement of various claims of the '388 Patent against HMD.[1]

2. Mark Jefferson Reed is a named inventor on the '388 Patent.[2]

3.  According to Mr. Reed, the asserted claims of the '388 Patent are related to systems, devices, and methods where a wireless mobile communications device is used to provide navigation information.[3]

4. According to Mr. Reed,  one of the improvements of the claims of the '388 patent over the prior art was not needing multiple CD's to store map related data because the '388 patent claims updating map tiles across the wireless network.[4]

---

[1]      Dkt No. 1-1.
[2]      *Id.*
[3]      Reed Decl. at ¶3.
[4]      *See* Reed Decl. at ¶4.

5.   According to Mr. Reed, in addition to software, certain hardware is necessary to practice the claimed invention of the '388 Patent.[5]

6.   According to Mr. Reed, although methods of locating a wireless device were known, his inventions made existing technology better.[6]  For example, the claims recite the use of preference flags to set the wireless mobile communications device to a state where it can either track or not track the device's location, which is non-conventional and inventive.[7]

7.   According to Mr. Reed, not all wireless mobile communication devices will work for the claimed inventions.  They must include processors capable of being programmed to perform the recited functionalities.[8]

## III.   LEGAL STANDARD TO DETERMINE PATENT ELIGIBILITY

To properly evaluate whether asserted claims "are directed to a patent-eligible concept,"[9] court must examine "the focus of the claimed advance over the prior art to determine if the character of the claim as a whole, considered in light of the specification, is directed to excluded subject matter,"[10] because patent protection does not extend to claims that monopolize the "building blocks of human ingenuity." Claims directed to laws of nature, natural phenomena, and abstract ideas are not patent eligible.[11] "First, [the courts must] determine whether the claims at issue are directed to" a patent-ineligible concept.  If so, "[the courts must] consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application."[12]

---

[5]     *Id.* at ¶5.
[6]     *Id.* at ¶6.
[7]     *Id.*
[8]     *Id.* at ¶7.
[9]     *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014).
[10]    *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1092 (Fed. Cir. 2019).
[11]    *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1366 (Fed. Cir. 2018).
[12]    *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 78-79 (2012).

## IV.    THE CLAIMS OF THE ASSERTED PATENTS ARE PATENT ELIGIBLE

HMD's Motion fails to properly analyze the asserted claims of the '388 Patent under controlling Supreme Court and Federal Circuit precedent applying § 101.   As such, the Court should deny the Motion.

### D.  The Claims of the '388 Patent are Patent Eligible

#### 1.   The Claims of the '388 Patent are Patent Eligible at Step 1

Claim 1 of the '388 patent claims "[a] **wireless communications system** including: **a first radio-frequency transceiver** within **a wireless mobile communications device** and **an associated first antenna** … **a wireless communications network**; **a first processor** … programmed … at least one **second radio-frequency transceiver** and an associated at least one **second antenna of the wireless communications network** … and **a second processor** … programmed …."[13]

Defendants cite no case law where a first radio frequency transceiver, antenna, first processor, wireless device, a second radio frequency transceiver, second antenna or second processor are determined to be abstract ideas.  Thus, under *Alice* the claims are determined patent eligible under the first step, as the claims are not directed to abstract ideas.

Claim 1 of the '388 patent does claim, as one element of many, a first processor and that first processor is programmed to perform certain functions.  For this reason alone, the claims of the '388 patent are patent eligible.[14]  As also explained in various embodiments of the '388 patent,[15] a wireless communication system is something physical and is claimed with sufficient

---

[13]      *See* Dkt. No. 1-1 at 128:45-129:21 (emphasis added).
[14]      *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316  (Fed. Cir. 2016) (claims to automatic lip synchronization and facial expression animation found eligible at Step 1 of the Alice/Mayo test as directed to an improvement in computer-related technology); *See also, Amdocs (Israel), Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016).
[15]      With a patent priority date of 2001.

specificity to be concrete.[16]  Thus, claim 1 is directed to an improved wireless communications system and the claims are patent eligible.

Claims 2-10 depend from Claim 1 and add additional, sufficiently concrete, elements and are likewise directed towards patentable subject matter.[17]

Claim 11 is an independent claim focused on a method of providing navigation information within a wireless network comprising the same physical elements of Claim 1 of the '388 patent and therefore is patent eligible for the same reasons.[18]

Claim 21 is an independent claim focused on a wireless communication device within a wireless communications network comprising the same or similar physical elements as Claim 1 of the '388 patent and therefore is patent eligible for the same reasons.[19]

### 2.  The Claims of the '388 Patent are Likewise Patent Eligible at Step 2

To be clear, Traxcell does not believe reaching the second step of *Alice* is necessary but if the Court decides otherwise, there are numerous improvements over the Prior Art mentioned in the patent that confirm patent eligibility of the claims, including using existing infrastructure of wireless networks for locating people and/or objects in a cost-effective manner,[20] updating map tiles across the wireless network,[21] obtaining faster routing information without a connection,[22] and others.

### E.  Defendants Case Law Does Not Support Their Position

HMD's cited cases are not analogous to present case and thus do not support their position that claims of the '388 Patent are patent ineligible.

---

[16]   *See, e.g., SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018).
[17]   *See* Dkt. No. 1-1 at 129:22-130:29.
[18]   *See* Dkt. No. 1-1 at 130:30-67.
[19]   *See* Dkt. No. 1-1 at 132:7-55.
[20]   *See* Dkt. No. 1-1 at 1:45-58.
[21]   *See* Dkt. No. 1-1 at 119:40-50.
[22]   *See* Dkt. No. 1-1 at 118:45-49.

In *Rothchild Location Techs. LLC v. Geotab USA, Inc.*, the Court considered claims "directed to a well-understood, fundamental concept of retrieving and sending data along with the requirement that it be performed between two 'positional information devices.'"[23]   HMD mischaracterizes the independent claims as they do not involve providing location information beyond that of an address.[24]   Unlike the instant case, that involved a "fundamental concept humans have long performed," for example, by calling an operator or an assistant for an address.[25]   Here, the claimed systems, methods, and devices require concrete structures for performing the recited functions, such as antennas, transceivers, multiple processors, a wireless network, and a wireless mobile communication device.[26]   This enables the provision of a wireless mobile communication device at the time, i.e. not based on information stored on a server.   Thus, the instant claims cannot be practiced in the abstract by, for example, using a paper map, and, accordingly, *Rothschild* does not apply.

In *Location Based Servs., Inc. v. Niantic, Inc.*, the claims at issue, unlike those of the instant case, did not involve concrete elements or, actually, require anything more than the human brain.[27] As the court explained:

> The claim is best described as a method for: (1) receiving a request for a specific map, (2) determining information about the requested locations based on rules associated with the location, and (3) communicating on the map whether a person may or may not enter the location based on those rules.[28]

In contrast, here the claims require specific computer and network equipment for specific tasks. Moreover, even if considered abstract under *Alice* step 1, the claims recite inventive features such

---

[23]     Case No. 6:15-cv-682-RWS-JDL, 2016 U.S. Dist. LEXIS 64121 at *15-16 (E.D. Tex. Jan. 4, 2016).
[24]     *Id*. at *4-6.
[25]     *Id*. at *16.
[26]     *See* Dkt. No. 1-1 at claims 1, 11, and 21.
[27]     295 F. Supp. 3d 1031, 1047 (N.D. Cal.).
[28]     *Id*.

as the use of preference flags to set the wireless mobile communications device to a state where its location may or may not be tracked.[29]

In *Concaten, Inc. v. AmeriTrak Fleet Sols., LLC,*[30] a district court in Colorado held three patents invalid as directed to patent ineligible subject matter because the claims were limited to "collecting and transmitting information regarding vehicle state and/or vehicle occupants."[31]  The court specifically found that "[t]he patent does not describe a new device or improvement in any specific device that would convert the scope of its claims from abstract idea to patent-eligible innovation."[32]

In *Encyclopaedia Britannica, Inc. v. Dickstein Shapiro, LLP*, the court decided a case similar to *Rothschild*, but unlike the instant case, in that the mapping related claims' functions were abstract.[33]  All that the claims required were simple storing, providing, and retrieving steps which boiled down to "the concept of organizing and storing information in a database, searching for information in the database, and retrieving information from the database."[34]  The court noted the similarity between this method and the method of using a printed encyclopedia to look up similar information.  That differs from the instant claims that recite concrete systems, methods, and devices for solving the problem of location determination and navigation on a wireless mobile communication device ***which cannot*** be performed merely by looking up stored information. Accordingly *Encyclopedia Britannica* is inapt.

## C.    The '388 Patent Claims Cannot Be Carried Out Mentally Or With Pen And Paper

---

[29]    Reed Decl. at ¶6.
[30]    131 F. Supp. 3d 1166 (D. Colo. 2015)
[31]    *Id.* at 1173.
[32]    *Id.*
[33]    128 F. Supp. 3d 103, 112-13 (D.D.C. 2015).
[34]    *Id.*

Contrary to HMD's argument, the '388 Patent claims cannot be carried out mentally or with a pen and paper.  HMD's hypothetical example ignores the fact that the '388 Patent claims *recite concrete structural elements*:  antennas, transceivers, processors, wireless networks, and wireless mobile communication devices, for instance.  Moreover, HMD's hypothetical example does not address the recited use of preference flags to set the wireless mobile communications device to a state of tracking or not tracking its location—another feature that cannot be performed in the abstract.  HMD's cases *Synopsis*[35] and *CyberSource*[36] both involve situations where the claimed methods can be performed literally by a person in the mind or with pen and paper—no machine is required at all.  Plainly, that is not the case with the claims of the '388 Patent, and, accordingly, HMD's argument fails.

**E.     The Claims Of The '388 Patent Are Directed To Improving Location Based Services On Wireless Mobile Communication Devices**

HMD improperly asks the Court to draw a factual inference in its favor at this motion to dismiss stage—that the claimed invention is not directed to an improvement in computer technology.  On the contrary, Mr. Reed testifies that his method improved the prior art at least by not needing multiple CD's to store map related data, the use of preference flags, existing infrastructure of wireless networks for locating people and/or objects in a cost-effective manner;[37] update map tiles across the wireless network;[38] obtain faster routing information without a connection;[39]among other reasons.[40]   Thus, the '388 Patent is directed to inventions where

---

[35]     *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1147-48 (Fed. Cir. 2016).
[36]     *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1370 (Fed. Cir. 2011).
[37]     *See* Dkt. No. 1-1 at 1:45-58.
[38]     *See* Dkt. No. 1-1 at 119:40-50.
[39]     *See* Dkt. No. 1-1 at 118:45-49.
[40]     Reed Decl. at ¶¶4-6.

computers are used as more than mere tools, and the Court should reject HMD's argument otherwise.

Unlike the situation in *In re LTI*, cited by HMD, the instant claims do involve improvements to the wireless network and mobile communication device components at least in that the claim require the use of preference flags to set the network and device to a state of location tracking or not tracking.[41]   The same is true for the case *SAP America, Inc. v. Investipic, LLC*, which is another example of a claim that can be performed without a machine (unlike the instant claims):

> 1. A method for calculating, analyzing and displaying investment data comprising the steps of:
>
> (a) selecting a sample space, wherein the sample space includes at least one investment data sample;
>
> (b) generating a distribution function using a re-sampled statistical method and a bias parameter, wherein the bias parameter determines a degree of randomness in a resampling process; and,
>
> (c) generating a plot of the distribution function.[42]

That the '388 Patent states that existing 2nd generation and future 3rd generation wireless technology may be used, it does not change the fact that not all wireless devices can perform the claimed functionalities.[43]   The devices must have processors capable of being programmed to do so.[44]

### E.    The '388 Patent Claims Satisfy *Alice* Step Two

---

[41]   *TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 612 (Fed. Cir. 2016).
[42]   *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1164 (Fed. Cir. 2018).
[43]   Reed Decl. at ¶7.
[44]   *Id*.

HMD's next argument involves even more unsupported assertions that certain elements of the '388 Patent claims are convention alone or even in combination. These factual assertions are not undisputed and would require an understanding of what is inventive about the '388 Patent claims—an inquiry not appropriate at the motion to dismiss phase. In particular, HMD cites no evidence that the use of preference flags to set the wireless mobile communications device to a state of location tracking or not tracking is a non-transformative or inventive concept.[45] Nor is there any evidence that use of such preference flags is a "conventional arrangement" as alleged by HMD.[46] As such, the '388 Patent claims, which require such features, encompass patentable subject matter.

The instant case is more analogous to that of *InfoGation Corp. v. ZTE Corp.*, where the court denied a § 101 challenge in a case involving a patent to a "Mobile Navigation System" alleging infringement based on smartphones running the Android operating system and using Google Maps for navigation.[47] The independent claim read:

> A mobile navigation system comprising:
>
> a navigation computer;
>
> a wireless transceiver coupled to said navigation computer for connecting with a navigation server, said navigation server for calculating optimal routes based on real-time information, said optimal routes being formatted using a non-proprietary, natural language description;
>
> a mapping database coupled to said navigation computer for reconstructing said optimal route from said non-proprietary, natural language description; and
>
> a display screen coupled to said navigation computer for displaying said optimal route using said mapping database.[48]

Similar to the instant claims, the claims at issue in *InfoGation* recited certain network and navigation related concrete elements as well as functionalities useful for navigation, all in

---

[45]     Dkt. No. 68 at 18.
[46]     *Id*. at 19.
[47]     Case No. 16-cv-1901-H-JLB, 2017 U.S. Dist. LEXIS 44873 at *4-5 (S.D. Cal. Mar. 27, 2017).
[48]     *Id*. at *8.

combination.[49]   Similar to the instant claims, the claims at issue in *InfoGation* could not be performed using mental processes or pen and paper.[50]   The court agreed with the patentee that the patent explained the improvement of the claimed invention and that it was not merely directed to providing directions, just as here the '388 Patent explains the benefits due to its claimed invention.[51]   For that reason the court held that "[b]y confining claim 15 to a particular technologic solution to identified problems," it was directed to patentable subject matter, and the court denied the accused infringer's Rule 12 motion under § 101.[52]

## V.     TRAXCELL'S INFRINGEMENT CLAIMS STATE PLAUSIBLE CLAIMS AGAINST HMD AND, SO, SHOULD NOT BE DISMISSED

HMD simply misrepresents Traxcell's First Amended Complaint (FAC) and what is required to plead patent infringement.   First, Traxcell provides an introductory paragraph stating that Defendants[53] make, use, offer to sell or import "wireless communication devices, wireless networks, wireless-network components, and related services" such that they infringe.   The ***very next part*** of the FAC is a chart that breaks out activities and accused components on an element-by-element basis, which is exactly what an infringement claim chart should do.   For instance, for the first element of claim 1 of the '388 Patent:

---

[49]     *Id*.
[50]     *Id*. at *15-16.
[51]     Reed Decl. at ¶6.
[52]     2017 U.S. Dist. LEXIS 44873 at *20-22.
[53]     Meaning each of them individually or in combination together.

| Example Claim | Examples of Corresponding Structure in Accused Systems |
|---|---|
| A wireless communications system including | |
| a first radio-frequency transceiver within a wireless mobile communications device and an associated first antenna to which the first radio-frequency transceiver is coupled, wherein the first radio-frequency transceiver is configured for radio-frequency communication with a wireless | This element corresponds to a wireless mobile communication device—including but not limited to Nokia, ALU and HMD Global wireless communications devices, for example, but not limited to Nokia 8, Nokia 6, Nokia 5, Nokia 3, Nokia 3310 Dual SIM, Nokia 150, Nokia 105, Nokia 105 Classic, Nokia 105 Dual SIM, Nokia 230 Dual SIM, Nokia 216 Dual SIM, and Nokia 130 Dual SIM—include radio-frequency transceivers and an associated antenna. When wireless communication device transceivers and antennas are in communication, they are coupled. Further, in addition to being so coupled, the transceiver of each Exhibit-B item is also configured for RF-communication with wireless cellular communication network, such as Sprint, AT&T, Verizon, or T-Mobile network via Google Maps or other navigation applications; which can be installed or comes preloaded on Exhibit-B items including but not limited to Huawei Mate Series Phones (Mate 10, Mate 10 Pro, Porsche Design Mate 10, Mate 9 Pro, Mate 9, Porsche Design Mate 9) [54] |

This chart entry indicates exactly which wireless communications devices from Nokia, ALU, and

HMD Global are accused.  It also indicates that those items are configured for RF-communication

with wireless carriers and names them specifically:  Sprint, AT&T, or T-Mobile.  It also indicates

that the Google Maps navigation application utilizes the processor coupled to the transceiver to

estimate/receive the location on mobile devices:

---

[54]       Dkt. No. 22 at 8.

| a first processor within the wireless mobile communications device coupled to the at least one first radio-frequency transceiver programmed to receive a location of the wireless mobile communications device from the wireless communications network and generate an indication of a location of the wireless mobile communications device with respect to geographic features according to mapping information stored within the wireless mobile communications device | Plaintiff contends that each Wireless mobile communication device-including but not limited Nokia, ALU and HMD Global wireless communications devices processor or like processor. When wireless communication device transceivers and processor are in communication, they are coupled. Further, the Google Maps application or any other indoor/outdoor navigation application on the wireless communication device utilizes a processor coupled to the transceiver to estimates/receive the location on mobile wireless communications devices by utilizing wireless communication network such as Sprint, AT&T, Verizon, or T-Mobile network or WLAN network

The Blue dot on Google Maps indicates the location of the wireless communication device, with respect to various geographical features such as streets, cities, or any point of interest.

Furthermore, Google Maps application mapping information comes from the Google Maps hardware/software using data plan or Wi-Fi network and hence is stored within the memory of wireless communication device. |

55

Each element and sub-element is identified by a corresponding structure and functionality in the accused components of the system.  It is apparent from the claim chart that the claimed systems, methods, and devices are combinations of components, sometimes from different manufacturers. As Traxcell further alleged in its FAC:  "Defendants' acts complained of herein caused those claimed-invention embodiments as a whole to perform, and Defendants obtain monetary and commercial benefit from it."[56]    Traxcell's infringement claim charts and accompanying

---

[55]    *Id*. at 9.
[56]    *Id*. at 12.

explanations for the '353 and '196 Patents disclose allegations in similar detail.[57]  HMD is being willfully dense by pretending it does not understand these allegations.

With respect to HMD, it is plain from the FAC that Traxcell did not accuse HMD of, for example, manufacturing or selling wireless base stations.  But, Traxcell's FAC does clearly accuse HMD's mobile handsets of being used in infringing systems and methods and for directly infringing the claims to wireless mobile communications devices themselves.  In fact, without HMD's contribution,[58] there would not be infringement.

## VI.    CONCLUSION

For the reasons provided herein, Traxcell requests the Court deny Defendants' Motion.


Respectfully submitted,

Ramey & Schwaller, LLP

By: /s/ William P. Ramey, III
William P. Ramey, III
Texas Bar No. 24027643
5020 Montrose Blvd., Suite 750
Houston, Texas 77006
(713) 426-3923 (telephone)
(832) 900-4941 (fax)
wramey@rameyfirm.com

Hicks Thomas LLP
John B. Thomas
jthomas@hicks-thomas.com
Texas Bar No. 19856150
700 Louisiana Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 547-9100
Facsimile: (713) 547-9150

*Attorneys for Traxcell Technologies, LLC*

---

[57]     *Id*. at 12-22.
[58]     Or another wireless communication device supplier meeting the claim limitations.

**CERTIFICATE OF SERVICE**

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that all counsel of record who have appeared in this case are being served today, September 10, 2018, with a copy of the foregoing via the Court's CM/ECF system.

/s/ William P. Ramey, III
William P. Ramey, III